HENRY DANCY v. THE STATE.

No. 2013. Decided November 8, 1899.

Motion for Rehearing Decided December 6, 1899.

**1. Continuance—Embezzlement.**

On a prosection for embezzlement, an application for continuance is rightfully refused for a witness by whom it was expected to prove that after the commission of the crime the prosecutor agreed upon a settlement of the matter with defendant. It is no condonation of a crime in law that the party who has embezzled money is afterwards willing to repay it. The proposed evidence was immaterial.

**2. Same.**

A continuance is always properly refused which, as to the matter expected to be proved, states mere conclusions and not facts; which states proposed evidence not probably true, or evidence which would not have had any effect on the verdict in the light of the other evidence adduced on the trial.

**3.  Embezzlement—Relevant Evidence.**

On a trial for embezzlement, it is relevant and competent, as bearing upon the intent of defendant, to prove a misappropriation of money subsequently received by him from the prosecutor for the same purpose as was the money he was charged with embezzling.

**4.  Same.**

On a trial for embezzlement, evidence of the disposition of other money received by defendant from the prosecutor subsequently, is also competent as tending to show the mode of dealing between the parties.

**5.  Juror and Jury Law—Affidavits of Jurors.**

Jurors should not be permitted to show by their affidavits that they ignored or disregarded the charge of the court in considering the evidence.

**6.  Same.**

Under the eighth subdivision of article 817, it is true, affidavits of jurors are allowed to impeach their verdicts in cases of misconduct, but the general rule is, that they should be allowed to impeach their verdicts only in special circumstances clearly amounting to misconduct on their part.

**7.  Same—Misconstruction of the Charge.**

The misconstruction or misapprehension of the jury of the charge of the court affords no ground for reversal.

ON MOTION FOR REHEARING.

**8.  Embezzlement—Partners.**

On a trial for embezzlement, where the evidence showed that the prosecutor advanced the money to defendant to be invested by him in cattle, the profits to be equally divided between the parties, this constituted them partners, and defendant having such an interest in and right to so control said money, his possession was not such a bailment as, under our statute, would make him liable for its embezzlement.

APPEAL from the District Court of Colorado.  Tried below before Hon. M. KENNON.

Appeal from a conviction of embezzlement; penalty, two years. imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

W. L. *Adkins,* for appellant, on motion for rehearing.—The court erred in overlooking the fact that the judgment of conviction is fundamentally erroneous, in that the evidence of the State, taken as true, does not make a case of embezzlement, for the reason that the transaction shows a bailment for the joint benefit of Miller and appellant.  This was called to the attention of the court by the eighth assignment of error, and undoubtedly overlooked in the consideration of the case, because the learned judge rendering the opinion, having been counsel for appellant in case of Reed v. State, 16 Texas Criminal Appeals, 586, was familiar with that decision, in which the rule is laid down that the kind of bailment made by the statute the subject of embezzlement is one solely for the benefit of the bailor, and wherein the property comes into the hands of the party by virtue of an office of agency or employment, and subject to the bailor's right to resume possession of the thing bailed.  Now let us apply the doctrine here announced to the case in hand.  Miller says in his testimony: "The agreement was, that I was to have one-half of the profits made on

the cattle, to be bought with the three hundred as well as with the two hundred dollars." Does this constitute a bailment contract to be executed solely for Miller? Not so; for the reason that the benefit to be reaped by the execution of the trust was a joint benefit of appellant and Miller,—the appellant acting as well for himself as for the bailor. Again, did the money come into the hands of appellant in the position of agent or employe, as charged in the indictment? Not so; for the obvious reason that an agent, employe, servant, or hireling holds the thing bailed without the right to deny the bailor's right to repossess himself thereof, but absolutely at the will of the bailor, and has no complaint to make if the bailor's orders about the thing bailed be rescinded, or possession be demanded by him. Under the agreement in the case at bar, Dancy had a vested right and interest in the thing bailed, which placed it beyond the province of Miller to repossess himself thereof without the consent of Dancy. If Miller had, immediately after delivering the money to appellant, changed his mind and demanded the return of the money, Dancy would simply have said, "By the contract just made with you, in which you were to furnish the money, I to furnish the time and labor in buying cattle, we to divide the profits, I will make a good round sum of money, and consequently your demand would, if acceded to, be a breach of contract to my damage, which you can not do, and I must therefore refuse to cause loss to myself by returning the very thing, by the use of which, for the purpose stipulated, I expect to make money for myself." Could an agent or servant thus refuse? Dancy was to pay Miller for the use of the money, or as hire for its use, one-half of the profits. Had he been the hirer of a horse there could have been no difference in principle. The character of the chattel does not change the principle. The question is, has the bailor so contracted in and about the thing bailed that the bailee's possession is coupled with such an interest in the thing itself, or in the benefits to come from its uses under the contract of bailment, that he has placed it beyond his right of repossession, which he does in all cases wherein the bailee could have a cause of action against him for damages for breach of contract, if he, without the bailee's consent repossess himself of the chattel? This right of action can never exist, however, when the contract is solely for the benefit of the bailor, we may mention in passing. So in the case before us. Not only was the contract not solely for Miller's benefit, but he could not have rescinded the contract without becoming liable to appellant for his damages. Our statute on theft, in cases of bailment, was enacted to meet just such cases as made by the State's evidence in this case, and is ample in all instances where the bailee, instead of carrying out the purposes of the trust as stated in the agreement, appropriates the thing bailed to his own use and benefit. Believing that the bailment established by the State's evidence herein is not that character of bailment made subject of the offense of embezzlement, as clearly decided in Reed's

case, cited supra; counsel respectfully contends that appellant's conviction is fundamentally unlawful.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of embezzlement, and his punishment assessed at confinement in the penitentiary for two years, and he appeals.

Appellant made an application for continuance, based on the absence of his wife, Lottie Dancy. He alleged that he expected to prove by her that Miller, the prosecutor, agreed to take a deed to the homestead of defendant and his wife for the money which defendant is charged to have embezzled; that she refused to sign the deed, and that then said Miller agreed to take 100 tons of hay; that she would further testify that the money which defendant is charged to have embezzled was furnished by said Miller for the purpose of carrying on a saloon business in connection with defendant. All that this witness would testify in regard to appellant satisfying the claim of Miller for the money may be true, and still appellant would be guilty of embezzlement. It would be no condonation of the crime, in law, that the party who has embezzled money is afterwards willing to repay the amount; and it is entirely consistent with the State's case that in this instance appellant desired to secure the money which he had embezzled by giving prosecutor a deed to his homestead, or delivering to him 100 tons of hay. If appellant had stated some fact that he could prove by his wife,—as that she was present when the money was turned over by the prosecutor, Miller, to her husband, Dancy, and heard the terms of the agreement, or that the prosecutor, Miller, told her what the terms of the agreement were,—then her testimony might appear to be material. But in this respect the application merely states a conclusion, to wit, that the money appellant is charged to have embezzled was furnished by said Miller for the purpose of carrying on a saloon business in connection with the defendant. If we were permitted to recur to the statement of facts to help out this application, that would show, by appellant's own testimony, that the witness Lottie Dancy was not present when the money he is charged to have embezzled was delivered to him by Miller, the prosecutor, and the agreement made. He states that this was not at his home, but at his cousin Barbara's house. It does not occur to us that the first portion of the testimony expected to be proved by the absent witness was material; and, furthermore, that the remainder of the testimony proposed to be proved by the absent witnesses was not of any fact, but was a mere conclusion stated; and, in addition to this, it does not occur to us that, if the witness had been present, and would have testified as stated, it would have been regarded by the jury, in the light of the other testimony in the case, as probably true, or that it would have had any effect on their verdict.

The second and third bills of exception raise the question as to the admissibility of Auerbach's testimony as to the payment made by appellant on the 31st day of January, 1898, of $75. Appellant says that this testimony was irrelevant, but he does not show how it was irrelevant. Evidence may be relevant as bearing directly on the issue, or it may be relevant as bearing on some collateral issue, which itself bears or serves to solve the main issue. Apparently, judging from the bill itself, the testimony is not irrelevant. If we recur to the statement of facts, the testimony in regard to the payment of this $75 has a bearing on the intent of appellant with reference to the embezzlement of the $300 delivered to him by the prosecutor on the 10th of January, 1898. Besides this, the testimony in regard to the $200, and its disposition, delivered by appellant on the 30th of January, 1898, was introduced into the case by the defendant himself. (See cross-examination of Miller.) Appellant himself testified with reference to the $200 that Miller paid to him on the 30th, some twenty days after the delivery of the $300, for the purpose of putting in a lunchstand, and as indicating the course of business between him and the prosecutor, Miller. The State's testimony, on the contrary, showed, or tended to show, that this $200 was received as the previous $300 had been received,—that is, for the purpose of buying cattle by appellant for Miller; and further tended to show that $75 of the $200 was at once appropriated by appellant, not to purchasing cattle, but to the payment of his private debt to Auerbach. This evidence having been introduced by appellant, he could not complain that the case showed a different disposition of same than that testified to by him. Moreover, if it had not been introduced by appellant, it was perfectly competent evidence as tending to show the mode of dealing between the parties, and that this money, though paid to appellant by Miller for the same purpose for which the $300 charged to have been embezzled was paid, was itself misappropriated by appellant, and as tending to show appellant's intent in regard to the money charged to have been embezzled, and to rebut appellant's defensive theory; and it was properly limited in the charge of the court.

In connection with appellant's third bill, on the subject of Auerbach's testimony, he appends the affidavits of certain jurors to show how they regarded said testimony, and that on account of said evidence they were induced to find the verdict against appellant. Affidavits of this sort are not allowable. Jurors should not be permitted to show by their affidavits that they ignored and disregarded the charge of the court in considering the evidence. Under the eighth subdivision of article 817, Code of Criminal Procedure, affidavits are allowed on the part of the jurors to impeach their verdicts. This is relative to the misconduct of the jury, and appears to be an exception to the general rule. While, in general terms, the failure of the jury to be controlled by the charge of the court might, in a certain sense, be considered misconduct, yet this is not the character of misconduct contemplated

by the statute. The rule on this subject is stated in Little v. Birdwell, 21 Texas, 597. We quote from that opinion as follows: "The generally received doctrine is that the affidavits of jurors shall not be received to impeach their verdict; and for the obvious reason that it would open a door for tampering with jurors, and would place it in the power of a dissatisfied or corrupt juror to destroy a verdict to which he had deliberately given his assent under the sanction of an oath. The subject was very fully examined in the case of State v. Freeman, 5 Connecticut, 348, and, after reviewing the authorities, the court concluded that 'almost the whole legal world is adverse to the reception of the testimony in question [that of the jurors who tried the case], and on invincible foundations.' In Graham & Waterman on New Trials it is said: 'It is admitted, notwithstanding a few adjudications to the contrary, that it is now well settled, both in England, and, with the exception of Tennessee, perhaps in every State of this confederacy, that such affidavits can not be received; and, we believe, upon correct reasoning.' 3 Grah. & W. New Trials, 1429. The numerous cases there collected and reviewed confirm the observation. In Tennessee, where the affidavits of jurors are admitted to impeach their verdict, it is said they must be received with great caution. Saunders v. Fuller, 4 Humph., 516. In Ohio it is said they are not, in general, admissible for that purpose, and can only be received under certain circumstances, where a foundation has been first laid by other evidence. Farrer v. State, 2 Ohio St., 54. The better opinion is that they ought not, in general, to be admitted to impeach the verdict, and, if received at all for that purpose, it ought only to be under special circumstances. The course of decision in this court has been decidedly to discountenance applications for new trials founded on the affidavits of jurors, and the consequence is that few cases of this kind have occurred in our practice. Kilgore v. Jordan, 17 Texas, 341; Mason v. Russel's Heirs, 1 Texas, 726; Campbell v. Skidmore, Id., 475."

Appellant contends that the charge of the court brought too prominently before the jury the State's theory, and omitted to properly present the defendant's theory; and he particularly insists that the court's charge required defendant to actually invest the money in the saloon before they should acquit him. We have examined the court's charge as complained of, and find it full and fair; and, as stated by the court, it does not bear out appellant's contention. By reference to subdivision 5, complained of, the jury were distinctly instructed to acquit defendant if they believed that the money was loaned to defendant by Miller for any purpose for a consideration to be paid in interest or in part of the profits resulting from the investment in the butcher business or in the beer saloon. This was in accord with defendant's theory and evidence.

The charge of the court limiting the purpose of the testimony is not obnoxious to the objection that it was upon the weight of the evidence.

The misconstruction or misapprehension on the part of the jury of the charge of the court affords no ground for reversal. Johnson v. State, 27 Texas, 758; Rockhold v. State, 16 Texas Crim. App., 577. There being no error in the record, the judgment is affirmed.

. *Affirmed.*

### ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—This case was affirmed at a former day of the term, and now comes before us on motion for rehearing. In this motion appellant insists that a rehearing be granted on the ground that the proof fails to show such a character of bailment as is the subject of embezzlement. He insists in this connection that the prosecutor's own testimony shows that he was a partner with defendant in purchasing cattle; that he furnished the money, to wit, $300, and defendant was to buy the cattle, and they were to divide the profits arising from the investment; and he refers us to Reed v. State, 16 Texas Criminal Appeals, 586. We have examined the record on this question, and find this language in the evidence of the prosecutor, Forrester: "The agreement was that I was to have one-half of the profits made on the cattle to be bought with the $300 as well as with the $200." This is all the testimony bearing immediately on this subject, and there is nothing in the record controverting it. So we are confronted with the bald proposition whether or not this arrangement made with regard to the fund of $300 is such a bailment as is the subject of embezzlement under our statutes. We think not. On the contrary, it constituted appellant and the prosecutor partners. As such, appellant received the $300 for investment in cattle, and he and prosecutor were to share the profits arising from the sale of the cattle. From the moment the fund was delivered to the prosecutor, he had an interest therein, and had a right to retain and control it. While, in a larger sense, the transaction might be characterized as a bailment, still it was not such a bailment as is contemplated by our statutes on the subject of embezzlement. This question was thoroughly discussed in Reed v. State, supra, and it is not necessary here to do more than to refer to that decision. Because, in our opinion, the fund of $300, under the facts of this case, was not such a bailment as is the subject of embezzlement, the motion for rehearing is granted; and the judgment is reversed and the cause remanded.

*Motion granted. Reversed and remanded.*

DAVIDSON, Presiding Judge, absent.