EUGENE HARTNETT v. THE STATE.

No. 4035. Decided May 26, 1909.

**1.—Embezzlement—Public Funds—Bailment—Estoppel Does not Apply.**

Where in a prosecution for embezzlement or misapplication of city funds, based upon article 103 Penal Code, the evidence did not show that the moneys appropriated were public funds owned by the city and had come into the possession of the defendant by virtue of his office, the conviction could not be sustained. The principle of estoppel does not apply.

**2.—Same—Case Stated—Want of Authority to Receive Fines—Custom.**

Upon trial for misapplication of city funds by a policeman, where the evidence showed that the defendant was a police officer in an incorporated city; that he was assigned to the position of jailor, and that the moneys which he was charged with embezzling came into his possession in payment of fines; and

there was absolutely no evidence in the record that by law (not custom) he was authorized to receive such money, the conviction could not be sustained. Following Warswick v. State, 36 Texas Crim. Rep., 63 and other cases. Distinguishing State v. Brooks, 42 Texas, 62.

Appeal from the District Court of Jefferson. Tried below before the Hon. L. B. Hightower, Jr.

Appeal from a conviction of embezzlement; penalty, five years confinement in the penitentiary.

The opinion states the case.

·F. J. Duff and Robt. A. John, for appellant.—Embezzlement of public funds, under article 103, must consist of allegations in the indictment, followed by proof by the State beyond a reasonable doubt, of the existence of the following facts:

(a) That the defendant was a city officer. ·

(b) That certain funds came into his possession by virtue of his office.

(c) That the funds were the funds of said city.

(d) That he converted them to his own use and benefit. Penal Code, art. 100; Webb v. State, 8 Texas Crim. App., 310; Crane v. State, 27 Texas Crim. App., 482, 9 S. W. Rep., 773; Livingston v. State, 16 Texas Crim. App., 652.

Funds, to be subject to embezzlement, under article 103, Penal Code, must be public funds owned by the city, and must come into the possession of the officer by virtue of his office. 19 Cyc. of Law and Practice, 549; County v. Sullivan, 8 N. W. Rep., 12; Harris County v. Stewart, 91 Texas, 133; Ex parte Wilford, 85 S. W. Rep., 1146.

The duty of an officer must be defined by law, and can not be created by custom or usage. Warswick v. State, 36 Texas Crim. Rep., 63, 35 S. W. Rep., 386.

The money alleged to have been embezzled must come into the possession of the appellant by virtue of his office. Warswick v. State, 36 Texas Crim. Rep., 63, 35 S. W. Rep., 386; Orange County v. T. & N. O. R. R., 80 S. W. Rep., 670; State v. Bolin, 19 S. W. Rep., 650; People v. Hilton, 36 Fed., 172; Zschocke v. People, 62 Ill., 127; Moore v. State, 74 N. W. Rep., 319; 19 Cyc., p. 549; Penal Code, art. 103.

F. J. McCord, Assistant Attorney-General, for the State.—The defense is purely a legal and technical one, consisting of two propositions:

1st. That there being no judgments and complaints in the corporation court that the city had no right or title to the money, and even though it was paid by the defendants to Hartnett and by him received and misappropriated, that he is not guilty as charged, but if guilty at all is only guilty of embezzlement as bailee of the de-

fendants in these cases who paid the money to him. In short, he sets up the void judgment, or the absence of judgment as a legal defense.

2d. That he is not guilty as charged, because he did not collect and receive this money by virtue of his office because the law does not impose upon him the duty of collecting money.

As to the first proposition, whether Hartnett can set up in his own defense when charged with misappropriating the money, that the judgment was void, please permit me to call your attention to the following authorities, which I think are pertinent: Moseley v. State, 25 Texas Crim. App., 515; Florez v. State, 11 Texas Crim. App., 102, 98 Am. Dec., 165; Leonard v. State, 7 Texas Crim. App., 417; State v. Pohlmeyer, 52 N. E. Rep., 1028; People v. Boyce, 37 Pac., 630; State v. O'Brien, 28 S. W. Rep., 311; Moore v. State, 74 N. W. Rep., 319; State v. Finley, 14 S. W. Rep., 185.

As to the second proposition, that he did not collect the money by virtue of his office because not specially charged by law with that duty, I think the following cases are in point: State v. Brooks, 42 Texas, 62; Crump v. State, 23 Texas Crim. App., 615; Sanner v. State, 2 Texas Crim. App., 458; People v. Sandus, 102 N. W. Rep., 959; Ex parte Hedley, 31 Cal., 107; Bishops Criminal Law, vol. 2, art. 361, 363, et seq.; State v. Silva, 32 S. W. Rep., 1007; 15 Cyc., page 503; Steiner v. State, 33 Texas Crim. Rep., 291.

As to the nature and duties of the office of police officer, I think a reference to the following citations may shed some light: Art. 43, Code Crim. Proc.; Weatherford v. State, 31 Texas Crim. Rep., 530; Art. 100, Criminal Code; Art. 1013, Code Proc.

RAMSEY, JUDGE.—The charging part of the indictment against appellant is in these words: "That Eugene Hartnett on or about the third day of March, One Thousand Nine Hundred and Eight (1908) and anterior to the presentment of this indictment in the county of Jefferson, and State of Texas, Eugene Hartnett was then and there a police officer of the incorporated city of Beaumont, which said city was then and there duly and legally incorporated under the laws of Texas, and was then and there acting and serving as such police officer, and as such police officer and by virtue of his said office there had come into his hands and was in his charge, custody and possession the sum of two hundred and eighty-one dollars and fifty cents, lawful and current money of the United States of America, and of the value of two hundred and eighty-one dollars and fifty cents, a better description of which said money is to the grand jurors unknown, which said money was then and there the property of said incorporated city of Beaumont, and the said Eugene Hartnett did then and there unlawfully and fraudulently take, misapply and convert to his own use the said money against the peace and dignity of the State." The indictment so returned against him

and the prosecution which ensued was based on art. 103, of our Penal Code. This article is as follows: "If any officer of any county, city or town in this State, or any clerk or other person employed by such officer, shall fraudulently take, misapply or convert to his own use any money, property or other things of value, belonging to such county, city or town, that may have come into his custody or possession by virtue of his office or employment, or shall secrete the same with intent to take, misapply or convert it to his own use, or shall pay or deliver the same to any person knowing that he is not entitled to receive it, he shall be punished by confinement in the penitentiary for a term not less than two nor more than ten years."

Many questions were raised in the court below which have also been urged in this court, as grounds for reversal of the judgment of conviction. We think the case must be reversed because under the uncontradicted evidence the conviction can not stand for the reason the moneys appropriated must be public funds, owned by the city, and must come into the possession of the officer by virtue of his office, and his duties must be defined by law and can not be created by custom or usage. The evidence in brief showed that appellant was a policeman in the city of Beaumont and that he was assigned to the position of jailor, and that the moneys, the embezzlement of which is charged herein, came into his possession in payment of fines assessed (quite irregularly) against various defendants in the corporation court of Beaumont. There was absolutely no evidence in the record that *by law* he was authorized to receive such moneys. This authority by law was vested in the city marshal and he was required to make payments monthly to the city treasurer. While it is possible that appellant might have been indicted and convicted as an employee of the marshal, it is certain that as here charged, where the conviction is sought by reason of misappropriation of funds received by him as an officer and by virtue of his office, that under the authorities a conviction can not be sustained. This question is, we think, definitely settled beyond serious doubt by the decision of this court in the case of Warswick v. State, 36 Texas Crim. Rep., 63. It was there held in substance that an indictment based upon art. 103, Penal Code, will not lie against a county judge for a misapplication or conversion of county school funds, because such funds can not come into his hands by virtue of his office; and the law does not authorize a county judge as such officer, to receive county school moneys. The suggestion is made, however, by Judge Henderson that the court should not be understood as holding that the commissioners court might not empower the county judge or any other person, to receive money coming to the county for and on behalf of the county, but in such contingency the money or property would come to such person, not by virtue of his official capacity, but on account of his employment or agency. A quite similar question

came before the Supreme Court of Missouri and was decided in the case of State v. Bolin, 19 S. W. Rep., 650. Their statute is somewhat similar, though rather broader than ours. It is as follows:

"If any officer, appointed or elected by virtue of the Constitution of this State, or any law thereof, including as well as all officers, agents, and servants of incorporated cities and towns, or municipal townships or school districts, as of the State and counties thereof, shall convert to his own use, in any way whatever, or shall use by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public moneys, or any valuable security by him received for safe keeping, disbursement, transfer, or for any other purpose, or which may be in his possession, or over which he may have the supervision, care, or control, by virtue of his office, agency, or service or under color or pretense thereof, every such officer, agent, or servant shall, upon conviction, be punished by imprisonment in the penitentiary not less than five years." Passing on this statute the Supreme Court of Missouri say: "No provision of the statute is pointed out or found, which directs or authorizes the public school money of the State or county to be placed in the possession or under the supervision, care or control of a justice of the peace, for safe keeping, disbursement, transfer or other purpose, and we are unable to see how he, as a public officer, can be guilty of embezzling funds which never came into his possession under any authority of law by virtue of his office. If he had no right to the possession or control of this public money as an officer, he would have no greater right when acting merely under color or pretense of office. We do not think the language of the statute 'under color or pretense' of an office can be construed to apply to an officer who, having in fact no right to the custody of public money, obtains the possession of it by falsely representing that he is entitled to its custody by virtue of his office. The statute was only intended to make one acting officially, under color of office only, equally liable for the misappropriation of the public money coming into his possession by virtue of his supposed official right to receive it, as he would have been had the title to his office been perfect." The doctrine laid down in the Warswick case, supra, was affirmed by the Supreme Court of Nebraska in the case of Moore v. State, 53 Neb. Rep., 831, where the matter is exhaustively considered. See also San Luis Obispo County v. Farnum, 108 Cal., 562. In the Moore case the court say: "That where an officer receives money which he is not by law authorized to receive, such money is not received by him in his official capacity, and that any duty which he may owe of paying the money is only that which rests upon any debtor or bailee, is established by many cases." It is suggested in the brief of our learned Assistant Attorney-General that by the circumstances of this case appellant can not defend on the ground that his acts were not within the limits of his legal authority, and the suggestion

is made that appellant is estopped from denying the fact that his act was authorized. This position is not, we believe, sound. In the case of Moore v. State, supra, on this question the Supreme Court of Nebraska say: "Nor do we think that there is any principle of estoppel whereby the defendant is forbidden to deny that he is within the class against which the penalties of the statute are denounced. For the purposes of this case we need not inquire whether the same rules apply as to·estoppel in civil and in criminal cases, or whether a man may ever be estopped to plead the law. The cases cited as applying estoppels are for the most part cases where an officer charged by law with the duty of collecting taxes has actually collected them and then refused to turn them over because illegally levied. There the general duty of collecting the money was imposed by law on the officer. The money was paid. The legality of ·the tax was a question solely between the public and the taxpayer, and the latter having voluntarily paid the tax, it was no affair of the collector whether he might have resisted the payment or not. The matter was not one of an estoppel. The issue was merely immaterial. No one could defend a charge of embezzlement as the agent of an individual, on the ground that a third person had paid money which he did not owe and could not have been compelled to pay; but there is a multitude of cases holding that he may defend if he had no authority to receive payment at all. Akin to these cases are those where a foreign corporation is prohibited from doing business except on compliance with certain requirements, and an agent embezzles its funds, and alleges in defense that the principal had no right to make the contracts leading to the collection of the money. This is really a case of an immaterial issue, or if it be one of estoppel, it is an estoppel to deny the facts giving the principal a right to do business. Where a criminal statute applies only to persons of a certain class, the doing of the acts which the statute forbids does not estop the defendant from denying that he belongs to the class which is alone subjected to the penalties. Yet that is at the last analysis the argument of the State on this branch."

This case is, as we believe, readily distinguishable from the ruling of our Supreme Court in the case of the State v. Brooks, 42 Texas, 62, upon which our Assistant Attorney General so much relies. It was there held, and correctly, that a deputy sheriff is *an officer* authorized to collect taxes, and as such is liable to indictment for embezzling money collected by him as taxes. The statute at the time of the prosecution of the case against Brooks was as follows: "If any officer of the government who is by law a receiver or depositary of public money, or any clerk or other person employed about the office of such officer, shall fraudulently take or misapply or convert to his own use any part of such public money, or secrete the same with intent to take, misapply, or convert to his own use, or shall

pay or deliver the same to any person, knowing that he is not entitled to receive it, he shall be punished by confinement in the penitentiary for a term not less than two nor more than ten years." The indictment charged Brooks in the language of the statute. Exceptions were presented to the indictment alleging its insufficiency, because, among other reasons, Brooks was not shown to be such an officer of the government as was included in the terms of the statute defining and punishing embezzlement. This motion prevailed in the court below and an appeal was prosecuted, as was then allowed, by the State to test the sufficiency of the indictment. The argument was made that the deputy sheriff is appointed by the sheriff and gives bond to him, and not to the State; that the sheriff on the other hand is designated by the Constitution and the law as the person to collect taxes and that the deputy sheriff did not bear such relation to the matter as constituted him under the law an officer charged with this duty. It was held, as stated above, that he was such an officer, and the court called attention to the fact that by law the sheriff was authorized to make appointments of deputies and that the statute authorizing such appointments provided that every deputy shall have the like authority in regard to collecting taxes within that portion of the county which may have been allotted to him, which the sheriff would have. (Pas. Dig., art. 7615.) It was also pointed out that the statute requires the deputy to take the same oath as required by the sheriff faithfully to discharge the duties required of him (Pas. Dig., arts. 7608, 7615), and that in case of disability, death, or removal of the sheriff, the deputies are required to proceed in the collection of taxes until the vacancy is filled. (Pas. Dig., 7616.) It was said: "In various other sections of the law the deputy is recognized as authorized to collect taxes. (Pas. Dig., arts. 7619-7621.) It was held that, "it is clear that the deputy sheriff has both the actual and legal possession of the taxes which he collects, and is not subject to indictment for theft." In that case it will be observed that the duties of the deputy sheriff were defined and fixed by law. He was authorized to collect taxes, and in the absence or during the disability of the sheriff was charged with the duty of so doing. In a sense he took the place of and acted instead of his principal, clothed with his duties and charged with his responsibilities and this as a matter of statute. These elements are conspicuously wanting in this case where no ordinance clothed appellant with the authority or placed upon him the responsibility of receiving and collecting fines.

The indictment charges an offense; it follows the language of the statute. As we believe, however, under the law, the facts do not support a conviction. In this attitude of the record and in view of the fact that the indictment does charge an offense against the law, it results that the prosecution can not be dismissed, but the

judgment of conviction is reversed and the cause remanded for pro-
ceedings in accordance with this opinion.

*Reversed and remanded.*

BROOKS, Judge, absent.