### John Adams v. The State.

No. 3207. Decided December 9, 1914.

Rehearing denied January 6, 1915.

**1.—Embezzlement—Indictment.**

Where, upon trial of embezzlement, under Penal Code, article 1416, the indictment followed substantially and completely the statute and approved precedent, there was no error in overruling a motion to quash. Davidson, Judge, dissenting.

**2.—Same—Case Stated—Indictment—Public School Fund—Embezzlement.**

Where, upon trial of embezzlement of certain school funds, the indictment alleged in substance that the trustees of a certain school district were an incorporated institution under the law, and that the defendant was their agent and employee who fraudulently embezzled, etc., money under their control be-

longing to the public school of said school district without their consent, etc., and followed approved precedent, there was no error in overruling a motion to quash. Davidson, Judge, dissenting.

**3.—Same—School Trustees—Body Politic—Special Ownership.**

Under the law, trustees of a public school district are a body politic and corporate, and all schoolhouses and other property belonging to said school district thereof are placed under their control and management, and where the indictment alleged that two of these trustees made the third one their agent to draw out of the county depository certain school funds for the purpose of repairing a schoolhouse, etc., who thereafter appropriated the same to his own use, he was guilty of embezzlement under article 1416, Penal Code. Davidson, Judge, dissenting.

**4.—Same—Rule Stated—Corporation—School District.** .

Where three persons constitute a corporation, any two of them can act as the corporation, and there is no law that requires all three of the trustees of a public school district who compose the corporation to do any official act, and where the indictment alleged and the proof showed that two of these trustees had authorized a third one to draw school money from the county depository for the purpose of repairing a schoolhouse, and that the defendant appropriated the said money to his own use, he was guilty of embezzlement. Davidson, Judge, dissenting.

**5.—Same—Charge of Court—Authority, Delegation of.**

Where, upon trial of embezzlement of the public school fund by one of the three trustees of a public school district who was made the agent of the other two trustees to draw out of the county depository school funds to repair a schoolhouse, the court gave a proper charge to the jury, there was no error in refusing requested charges in which it was contended that said other two trustees had no authority to delegate any of their official duties to a third person and that the allegation and the proof did not show the offense of embezzlement, etc. Davidson, Judge, dissenting.

**6.—Same—Public School Fund—Affidavit—Oath—Claim—Voucher.**

There is no law which requires any one who has an account against the public school district to make an affidavit to the claim as contradistinguished from making an oath thereto; in fact, the law requires neither, but requires the county superintendent to approve vouchers legally drawn on the school fund, and where such voucher was drawn as the law directs on the county depository, it became a charge against said school fund, and where defendant appropriated the same to his own use instead of spending the same in the repair of a certain schoolhouse, as he was legally delegated to do by the other two trustees of the school district, he was guilty of embezzlement. Davidson, Judge, dissenting.

**7.—Same—Public School Fund—Depository—Identity of Money.**

Upon trial of embezzlement of public school funds, it was immaterial whether all of the money was in the depository to the credit of that fund at the time the defendant drew it out to pay off the voucher to him, as all the parties treated the money procured by the defendant at the time as the school money, and it was not necessary to be the identical money received by the county depository as the school money. Davidson, Judge, dissenting.

**8.—Same—Case Stated—School Trustees—School Fund—Embezzlement.**

Where the three trustees of a public school district determined that certain supplies should be procured and certain improvements made on a public school building, it was wholly impracticable for all three of them to do this or to personally see that it was done, and where they appointed the defendant who was one of the board as their agent to procure these supplies, etc., and directed and authorized him to make out the voucher against the county depository, sign their name to it and procure the money for that purpose, and

the defendant thereafter appropriated the money for his own use, he was guilty of embezzlement. Following Hitchcock v. City of Galveston, 96 U. S., 341, and other cases. Distinguishing Hartnett v. State, 56 Texas Crim. Rep., 281, and other cases.

### 9.—Same—Official Capacity—Embezzlement—Fiduciary Relation.

Where defendant was indicted for embezzlement, alleging that he as one of three school trustees was delegated by the other two trustees to draw out of the county depository certain school funds for certain school purposes and that he afterwards appropriated the same to his own use, an objection to the indictment, the evidence and the charge of the court that it was not alleged and proved defendant acted in his official capacity as school trustee was not well taken, and did not apply to the allegation and proof in the instant case, as the defendant was not indicted for embezzling money which came to his hands in his official capacity, but as agent of the other two trustees. Distinguishing Warswick v. State, 36 Texas Crim. Rep., 63; Dickey v. State, 65 Texas Crim. Rep., 375. Davidson, Judge, dissenting.

Appeal from the District Court of Newton. Tried below before the Hon. A. E. Davis.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Wightman & Hancock,* for appellant.—On question of insufficiency of indictment: Huntsman v. State, 12 Texas Crim. App., 619; Webb v. State, 8 id., 310; Leonard v. State, 7 id., 417; Taylor v. State, 16 S. W. Rep., 302; Griffin v. State, 4 Texas Crim. App., 390, and cases stated in opinion.

On question of refusing to give requested charges: Gerard v. State, 10 Texas Crim. App., 690; Nesbitt v. State, 65 Texas Crim. Rep., 349, 144 S. W. Rep., 945; Hartnett v. State, 56 Texas Crim. Rep., 281, 119 S. W. Rep., 855; Bank v. March, 51 S. W. Rep., 266, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of sufficiency of indictment: Leach v. State, 46 Texas Crim. Rep., 507; Steiner v. State, 33 id., 291.

PRENDERGAST, Presiding Judge.—Appellant was convicted of embezzlement and assessed the lowest punishment.

He made a motion to quash the indictment on various grounds. He also excepted to the court's charge, and to the refusal of the court to give his special charges, based, practically, on the same grounds as his motion to quash. It will be wholly unnecessary to take up each of these matters specially; they can and will be all considered and disposed of in the opinion. The facts are established practically without any conflict.

In Newton County there was a common school district No. 10. In that district there were two common schools, one for white children, the other for colored children. There were three trustees for this district and these schools, J. C. Cole, J. W. Robinson, and appellant. Our

law made these trustees "a body politic and corporate in law." (Revised Civil Statutes, 2822.) All schoolhouses and other property belonging to said school district by law were placed under their control and management. (Rev. Stats., 2847.) All school funds of such district were required to be kept in the county depository and paid out on order of said trustees, approved by the county superintendent. (Rev. Stats., 2856.) The trustees alone were authorized to expend the money (Collier v. Peacock, 93 Texas, 259), and the depository could not pay it out except on warrants drawn by such trustees. (Rev. Stats., 2768, 2856.) The trustees were expressly by law authorized to expend said district school money for purchasing appliances and supplies, repairing the schoolhouses, and for other purposes necessary to the conduct of the public schools to be determined by the trustees. (Rev. Stats., 2772.) The Newton County Bank at Newton, in said county, was the depository of the school fund of said county and district.

In September, 1913, said trustees determined that certain repairs on the schoolhouse of said colored school building and supplies for that school were necessary to be made and had, before the opening of that school in October or November following. Thereupon they, or said Cole and Robinson, two of them, designated and authorized appellant to procure the material and have said repairs made on said colored schoolhouse, and to procure the necessary supplies therefor, and to pay the public school money belonging to said district and school for the same, and for that purpose gave him authority to get the money, by signing their names to a proper voucher, take charge of it, and pay it out, and he undertook to do so in compliance with this authority, agency and employment. For the purpose of procuring the money to pay for said repairs and supplies they also authorized him to make out the proper voucher, sign their names thereto as trustees, and procure the funds from the depository for that purpose. Thereafter, on October 20, 1913, appellant made out a voucher, check or draft on said depository, requiring it to pay to his order $376 for repairs and supplies for said colored school in said district and signed thereto the names of said Cole and Robinson as trustees for said school district. They had expressly authorized him to sign their names to such voucher, draft or check. He presented this to the county superintendent, swore to it, and the superintendent thereupon officially approved the same for said full amount. Thereupon he took it and personally presented it to the depository for payment out of the school fund belonging to said district and colored school. There was not at that time sufficient funds to the credit of that school to pay it off in full. How much there was in the depository at that time is not shown. The cashier of the bank, for appellant, discounted the said voucher, check or draft $18.80, and paid him $357.20. Appellant claimed that he paid out $80 of said money for lumber to make the repairs on said school building. It was clearly established without controversy he did not pay $80 therefor, but paid only $41.30. He claimed that he paid $42 for labor to have said repairs made; he paid actually only $36.75. He claimed to have paid $4 for

nails, whereas he paid only $2.60 or less. He claimed he paid $32 for hauling said lumber; in fact, he paid only $20, and at least $8, if not $12 of that was paid to himself for hauling. He paid himself $20 of it, which he claimed was for five trips that he personally made to different places on business for said school in making said repairs and purchasing said supplies. That he paid $20 of it for janitor service (it seems for some other school), and either $36.11 or $38.71 for books. (It seems this was for some other school.) Conceding, however, that all of these latter items were proper charges against said colored school, and properly paid out by him as such, and allowing $38.71 for books instead of $36.11, it shows that he actually paid for all of said material, repairs, labor, books, etc., only $179.36, and that he fraudulently embezzled, misapplied and converted $196.64 of said money to his own use and benefit, or deducting the $18.80 discount on the draft, it shows that he embezzled, etc., $177.84. Without contradiction it was shown that he paid a note of his deceased son at said bank of $142.45 with said money at the time the money was turned over to him. Each of the trustees, Cole and Robinson, testified positively that said misappropriation of said money was without their knowledge or consent, and that they gave him their consent only to pay said money for the material for said repairs, the labor, etc., on said colored building and for the supplies therefor. It is further shown by the uncontroverted evidence that the money he received on said draft was paid to him and received by him as the school's money that belonged to that district and school, and that while all of the money at the time the bank paid it to him was not on deposit to that school fund, yet that the money soon afterwards did come into the depository, and the said draft, voucher or whatever it may be called was actually charged to said fund, and there can be no question but that in reality the money that he got and embezzled was the school money of that school.

The indictment avers that appellant on or about October 20, 1913, "was the agent and employe of J. C. Cole and J. W. Robinson, trustees in and for common school district No. 10 in Newton County, Texas, and trustees for Oak Grove colored school No. 2 in said common school district No. 10 in Newton County, Texas, and the said John Adams did then and there fraudulently embezzle, misapply and convert to his own use, without the consent of the said J. C. Cole and the said J. W. Robinson, trustees aforesaid, and without the consent of anyone else legally authorized to give such consent, and without the consent of anyone authorized to give the consent of Oak Grove colored school No. 2 in common school district No. 10 in Newton County, Texas, certain money, the same then and there being the corporeal personal property of and belonging to Oak Grove colored school No. 2 in common school district No. 10 in Newton County, Texas, and which said money was under the supervision and control of the said J. C. Cole and the said J. W. Robinson for said school aforesaid, towit: Sixty dollars in money, current money of the United States, of the value of sixty dollars, and which said money had theretofore come into the possession of, and was

then and there under the care of the said John Adams by virtue of his said agency and employment."

The statute is (P. C., 1416): If any agent of any incorporated institution or any agent or employee of any private person shall embezzle, fraudulently misapply or convert to his own use, without the consent of his principal or employer, any money or property of such principal or employer which may have come into his possession or be under his care by virtue of such agency or employment, he shall be punished, etc.

Appellant made a motion to quash said indictment, contending (1) that it charged no offense; (2) that it alleged he was the agent and employee of Cole and Robinson, and it nowhere alleged that the owner was his principal; (3) it failed to allege any state of facts which shows any trust relation between said school and him; (4) it shows that if he received any money of said colored school, it was unlawfully paid to him and no trust relation could therefore exist; (5) it shows that Cole and Robinson had control of the funds of said colored school, which allegation is contrary to law and not in accord with the legal authority of said trustees; (6) it alleges that he was the agent and employee of Cole and Robinson, and that he fraudulently embezzled, etc., $60 in money, which was the personal property of and belonged to said colored school, and nowhere alleges that he embezzled, etc., any money of his alleged principal, but alleged that he embezzled, etc., money belonging to said colored school, and he is not charged in the indictment to bear any fiduciary relations to said school; (7) it alleged that he was the agent and employee of the school trustees of said colored school, and (8) the trustees of said colored school had no right under the law to collect and have under their supervision and control any money belonging to said school, and to deliver it to defendant or any other person as their agent and employee. We have given the substance of each of his objections to said indictment. Not one of them is good.

The indictment follows substantially and completely the statute and the form for such indictment thereunder as prescribed by Judge White in his Annotated Penal Code, sections 1624-1627. Analyzing the indictment and measuring it up with the law, it avers in substance and in effect that the trustees of said school was an incorporated institution— a body politic and corporate in law. The law so made said trustees. (Rev. Stats., 2822.) That he was their agent and employee; that he fraudulently embezzled, etc., said money without their consent, and without the consent of anyone else legally authorized to give it, and without the consent of anyone authorized to give the consent of said colored school and district; that the money was the property of and belonged to said school, but it was under their supervision and control for said school, and that the same came into appellant's hands by virtue of his said agency and employment. Therefore, all the requisites of the statute and the decisions were alleged which were necessary to allege the offense. See some of the cases cited by Judge White in sections 1625 and 1626 of his Annotated Penal Code. The money as alleged

in the indictment belonged to and was the property of said school in said district. The bank was the depository, but the disposition and paying out of the funds was exclusively under the control of the trustees. (C. C. P., art. 457.) The bank, depository, could not legally pay it out otherwise. Where three persons constitute a corporation, any two of them can act as the corporation, and their act as such is the act of the corporation. There is no law that requires all three of the trustees of a school district who compose the corporation to do any official act.

The court gave a full, fair and complete charge under the law and in accordance with the questions raised by the evidence. In submitting the case for a finding the court told the jury: "If you believe from the evidence beyond a reasonable doubt that the defendant, John Adams, on or about the 20th day of October, A. D. 1913, in the County of Newton and State of Texas, was the agent and employee of J. C. Cole and J. W. Robinson, trustees, in and for common school district No. 10 in Newton County, Texas, and trustees for Oak Grove colored school No. 2 in said common school district No. 10 in Newton County, Texas, and the said John Adams did, then and there, fraudulently embezzle, misapply and convert to his own use without the consent of the said J. C. Cole and the said J. W. Robinson, trustees aforesaid, and without the consent of anyone else legally authorized to give such consent and without the consent of anyone authorized to give the consent of Oak Grove colored school No. 2 in common school district No. 10 in Newton County, Texas, certain money, the same then and there being the corporeal personal property of and belonging to Oak Grove colored school No. 2 in common school district No. 10 in Newton County, Texas, and which said money was under the supervision and control of the said J. C. Cole and the said J. W. Robinson, trustees, for said school aforesaid, towit, fifty dollars or more than fifty dollars in money, current money of the United States of the value of fifty dollars or more than fifty dollars and which said money had theretofore come into the possession of and · was then and there under the care of the said John Adams by virtue of his said agency and employment as aforesaid, then you will find the defendant, John Adams, guilty as charged." Then in a separate and distinct paragraph he submitted the converse of all this, telling the jury that if they did not believe beyond a reasonable doubt each· of the said essential matters required in the charge copied, to acquit him.

Appellant objected to the court's charge on these grounds: (1) It does not define any offense; (2) wherein the court uses these words, "J. C. Cole and J. W. Robinson, trustees," it was upon the weight of the evidence and assumed that they were acting in their official capacity as such trustees; (3) he claims these words in said charge, "which said money was under the supervision and control of the said J. C. Cole and the said J. W. Robinson, trustees," assumed that said money was legally in their hands as trustees alone, claiming that there was no evidence to show that said money had ever legally been in their care and control, and that said money, if any, was under appellant's absolute care and control; (4) because the charge did not tell the jury that the school

board, or any of the trustees, had no authority to delegate any of their official duties to a third person, and if appellant was acting under such attempted delegation of authority, they should acquit him; (5) because it did not tell the jury that appellant was one of the trustees of said school, and as such he had received funds alleged to have been embezzled by him and to acquit him; (6) because it did not tell the jury that unless they found that a voucher or warrant was duly drawn on the funds of said school, after an account was duly approved showing the amount named in it was due and payable as a valid claim against said school, and before such account could be lawfully allowed and paid it must have been approved by the trustees, and unless it did so the money alleged to have been embezzled by him came into his hands without warrant of law, and he should be acquitted; (7) because it did not instruct the jury that unless they should find beyond a reasonable doubt that there were sufficient funds of said school to its credit at the time of the issuance of the warrant to pay it in full, to acquit him; (8) because it did not instruct the jury that unless they believed beyond a reasonable doubt that Cole and Robinson did in person and as trustees of said school approve the account for which the warrant was drawn, to acquit him; and (9) because the court did not instruct the jury that if the amount embezzled was less than fifty dollars, that it would be only a misdemeanor, and the court did not in that event inform the jury what their verdict should be.

He then requested several special charges presenting, in effect, the same questions substantially as he had objected to the court's main charge not submitting. In our opinion none of appellant's exceptions to the court's charge present any error, and in consequence the court did not err in refusing all of his special charges. We think it unnecessary to discuss these matters seriatim.

We do not understand that Cole and Robinson delegated unlawfully their power and authority to appellant. All three of the trustees determined that certain repairs on said school building and supplies for the school were necessary to be had, and they determined to have this done. The three were necessarily not expected to buy the supplies, the material for the building, nor do the work thereon. They could, or any two of them could, as they did, make appellant their agent for carrying out and doing these things, which all three of them had determined should be done, and directed that appellant should do it, or have it done. Neither do we understand that they delegated any illegal power or authority to him when they told him to sign their names to the proper voucher to get the funds to do this identical work and furnish the supplies that they had determined and directed should be procured and done and that he should thus get the school money and therewith pay for same. Even if it had been improper for them to have directed him to sign their names to the voucher, they afterwards clearly ratified and approved it by their action, and through that means he got the money of the school for the specific purpose determined upon, and clearly embezzled nearly two hundred dollars of it. The evidence,

without contradiction, shows that when he presented the voucher to the superintendent for his approval, he swore that it was correct, and the superintendent so certified, and thereupon approved the voucher. We know of no law which requires anyone who has an account against a public school district to make an *affidavit* to the claim as contradistinguished from making an *oath* thereto. The fact is, we know of no law that requires anyone to make either an oath or an affidavit to any such claim. It requires the county superintendent to approve vouchers legally drawn on the school fund. (R. S., 2756.) Neither does the law prescribe any form whatever for such a voucher, but in this instance, as shown above, the voucher was drawn in just such way as it occurs to us it should have been drawn, so far as its form was concerned, and it was an amply sufficient voucher for the depository to pay and charge to the school fund as it did. Even if an oath was necessary, the testimony without contradiction shows that that was made by Adams at the time and before the superintendent approved it. He swore to it. It was not necessary that he should sign any affidavit. Ewing v. State, 38 S. W. Rep., 618; Morris v. State, 2 Texas Crim. App., 502; Shelton v. Berry, 19 Texas, 154; Crist v. Parks, 19 Texas, 234; Alford v. Cochrane, 7 Texas, 487; Anderson v. Cochran, 93 Texas, 583.

As shown above, we think it immaterial whether or not all of the money was in the depository to the credit of that fund at the time to pay off the voucher to appellant. All the parties treated the money procured by appellant at the time as the school money. That part of it which he did pay for proper expenses of the school was paid as school money on proper school debts duly authorized to be made. As soon as the balance of the funds belonging to that school came into the hands of the depository, the draft itself was charged against it and the money actually expended on the draft. At the time appellant got the money he got it and treated it as the money belonging to said school under his agency and employment by the other trustees. It had the effect, so far as the school was concerned and the trustees, of appropriating that much of the school fund to the payment of the draft as school money, and appellant got all of the money except the $18.80, which he paid to the bank in discount. It did not have to be the identical money received by the depository as the school money. In fact, the identical money is never kept, nor supposed to be, by the depository.

In Hitchcock v. City of Galveston, 96 U. S., 341, 24 L. Ed., 659, it was shown that the city council of Galveston determined to do certain street work. The city council thereupon directed its mayor and the chairman of the committee on streets and alleys to enter into and make a contract or contracts with the proper parties to do this work. The mayor and this committeeman did enter into contracts to have the work done and the material supplied. In that case it was contended that the city council had no authority or power to delegate such power and authority to the mayor and this committeeman. In answering that contention, the United States Supreme Court said: "It is true, the council could not delegate all the power conferred upon it by the Legislature,

but, like every other corporation, it could do its ministerial work by agents. Nothing more was done in this case. The council directed the pavements, ordering them to be constructed of one or the other of several materials, but giving to the owners of abutting lots the privilege of selecting which, and reserving to the chairman of their committee authority to select, in case the lot owners failed. The council also directed how the preparatory work should be done. There was, therefore, no unlawful delegation of power. But, if there had been, the contract was ratified by the council after it was made."

In Kramrath v. City of Albany, 127 N. Y., 575, it was shown that the city council of that city authorized a committee or agent to fit up and procure furniture for one of the rooms of a building to be used for the city because of the destruction by fire of its city hall. The committee did this. When pay was sought by the persons who had furnished the material, it was claimed that the city council had no power or authority to delegate its power and authority to a committee. The court held: "The principle of law is well established that public powers or trusts devolved by the charter upon the common council are to be exercised when and in such manner as it shall determine and can not be delegated. In other words, the governing body of the city can not confer upon one of its committees the power to perform acts which relate to the government of the city. But that principle has no application to this case. The leasing or furnishing of a room for the transaction of the city's affairs is a mere business act, and in its power to perform it the city differs in no respect from an ordinary business corporation or an individual, and it may delegate the power to perform such acts to agents or committees. . . .

"It would hardly be practicable for all or a majority of the members of a common council to attend to the details of such purchases, nor can it be said to be unlawful for the committee to permit one or two of its members to make selection of the particular article of furniture required. And when the work and material have been actually ordered by the common council and the city has had the full benefit of them without objection from any of its officers, very slight evidence is sufficient to support a finding that any irregularities in the committee's action have been waived and their general acts ratified." See also 28 Cyc., 648; Wright v. Jones, 55 Texas Civ. App., 616, 120 S. W. Rep., 1139.

So in this case the whole board of trustees—the three of them—had determined that certain supplies should be procured and certain improvements made on the school building of said school. It was wholly impracticable for all three of them to do this or to personally see that it was done. They thereupon determined to have appellant, one of their number, as the agent of the other two, who constituted a majority of it, and as their employee, to procure these supplies and have this repairing done, and for that purpose they directed and authorized him to make out the voucher and sign their names to it to procure the money for that purpose, and for no other purpose. They did not

thereby delegate to him powers that they could not. The signing of their names by him to the voucher on which he got the money was not a delegation to him of such power and authority as not to make the fund that he did get thereon the school fund. But even if their act in this respect was beyond their power, they ratified and approved it; each one received four dollars of the money from appellant for hauling a part of the material used to repair said building, and it enabled him to get the money, and he did get the money, and he embezzled it as shown above.

In our opinion neither of the cases of Hartnett v. State, 56 Texas Crim. Rep., 281; Warswick v. State, 36 Texas Crim. Rep., 63, nor Dickey v. State, 65 Texas Crim. Rep., 375, 144 S. W. Rep., 271, have any application to this case. In the Hartnett case, he was indicted for receiving money of the City of Beaumont *in his official capacity* as a police officer thereof, and he was indicted for embezzling the money that so came to his hands in his said official capacity. The proof showed that he had no power or authority as such city official to receive any fund whatever belonging to the City of Beaumont in his official capacity.

In the Warswick case, he was convicted for converting the money of the county of which he was county judge, alleging that he received it as such *in his official capacity.* The law neither authorized nor permitted him to receive any money for the county, and the case was reversed because he was indicted as receiving the money *in his official capacity,* and he had no power or authority to so receive it. In that case, however, Judge Henderson, in rendering the opinion for the court, said: "We would not be understood as holding that the Commissioners Court might not empower the county judge or any other person to receive money coming to the county and on behalf of the county, but in such contingency the money or property would come to such person not by virtue of his official capacity, but on account of his employment or agency." In the Hartnett case what Judge Henderson said was specially mentioned and approved. We think this applicable to the facts and law of this case. In the indictment in this case the questions on which those cases were decided were expressly avoided. Appellant was not indicted for receiving and embezzling money which went into his hands in his official capacity, but as agent and employee as distinguished in said cases.

In the Dickey case, he was indicted for receiving the money of the City of Waco in his official capacity as city secretary thereof. It was shown that he had no power or authority in his said capacity to receive any money whatever for the city, but in fact the laws of the city prohibited him from doing so. Hence, as we say, neither of these cases have any application to this case, but what was said by Judge Henderson in the Warswick case, supra, is exactly applicable and in point in this case.

In our opinion there is no reversible error in this case, and the judgment is ordered affirmed.

                                        *Affirmed.*

DAVIDSON, JUDGE.—I dissent. I do not believe the law or facts authorize the conviction.

DAVIDSON, JUDGE (dissenting).—When the opinion was handed down I entered a dissent, stating generally that the case ought to be reversed both on the law and the facts. Appellant is charged with embezzlement in that he was the agent and employee of J. C. Cole and J. W. Robinson, trustees in and for common school district No. 10 in Newton County, and trustees for Oak Grove colored school number 2 in said common school district number 10 in Newton County, and he did then and there fraudulently embezzle, misapply and convert to his own use, without the consent of said Cole and Robinson, trustees aforesaid, and without the consent of anyone else legally authorized to give such consent, and without the consent of anyone authorized to give the consent of Oak Grove colored school number 2 in common school district number 10 in Newton County, certain money, etc., which money was under the supervision and control of Cole and Robinson, trustees aforesaid.

This indictment was framed under article 1416 of the Revised Penal Code, defining the offense of embezzlement. Under that definition the relation of principal and agent or employee must exist, and always carries with it the idea of a fiduciary relation or status, and the offense can not be without it. If this relation does not exist, or the accused is not a principal or accomplice, aiding the embezzler, then he is not subject to prosecution under that article. Under the facts appellant could not be and was not an employee or agent of Cole and Robinson, and under the law could not be. He must be agent or employee, and must receive property in such capacity to constitute him an agent. They were all three trustees of the same school community, and held that position in a trust relation, officially. They could not delegate their authority, nor appoint agents to act in their stead or place. The statute does not authorize these officers to delegate their authority or appoint agents. The trustees by virtue of their office had control, in a certain sense, of the school property, situate in the school district, but could not even sell it without an order of the Commissioners Court. It devolved upon them as trustees to have the property repaired or schoolhouses built, and to make contracts to that end. Articles 2772, 2844 and following articles. The statute does not authorize school trustees to hold, possess or control school money.

The evidence incontrovertibly shows that they did not have in possession any school money, under the law they could not have such possession. On the contrary, it shows they did not, and articles 2767 and 2777 expressly provide that school money shall be placed in the hands of the depository, and the facts show that the Newton County Bank was the depository, conforming to the law in becoming such, and that all money belonging to the schools of that county was kept in that depository. As school trustees are not charged with receiving money in their official capacity, they, therefore, could not be the owners of school

money in any sense, general or special. · In order to charge an officer with embezzling or misapplying public funds, he must be charged as such and his duties as such officer must authorize or require him to receive money in his official capacity. Hartnett v. State, 56 Texas Crim. Rep., 281; Warswick v. State, 36 Texas Crim. Rep., 63, and Dickey v. State, 65 Texas Crim. Rep., 375, 144 S. W. Rep., 271. School money is deposited in the county depository, to be paid out only as the law authorizes. In that way the depository may be said to be the special owner of funds of this character, because the law requires it to be so kept. If school trustees can not receive the money or be charged with and prosecuted as embezzlers, it would be difficult to conceive how they could create an agency in any way with reference to receiving such money. The question of ownership in embezzlement is the same as in theft, for embezzlement is but a fraudulent conversion· of money or property by the agent from the principal. See Leach v. State, 46 Texas Crim. Rep., 507. Appellant was one of the trustees of the school district mentioned in the indictment, Cole and Robinson being the other two. These trustees all occupied the same relation to the law in all matters of duty or obligation. If one was a principal, they were all principals. If one was agent, they are all agents. They are authorized to approve accounts or vouchers to be subsequently approved by the county superintendent⁺ of the county schools. This and this only authorizes the depository to pay such voucher. This is the full extent of their connection with school money. Therefore, neither nor all of them could be owners, special or general, of the funds. They were not only not in control of the funds or had the funds in possession as demonstrated by the facts, but under the law they could not be, nor have control of such money. If this matter is viewed from the standpoint of partnership, appellant could not embezzle from the partners nor be charged with embezzlement of partnership funds. This matter has been settled by quite a number of cases in Texas. See Dancy v. State, 41 Texas Crim. Rep., 293, and Manuel v. State, 44 Texas Crim. Rep., 433. But the general question is not debatable under our authorities. To constitute the relation of principal and agent, there must be authority or capacity to create such relation. The agent must be in the employment of the principal in some fiduciary relation. Unless the law specially authorizes an officer to receive money he can not do so, and, of course, he would not be authorized to appoint a deputy or agent to receive money. The statute in this instance does not authorize the appointment of agents or deputies. All three of the trustees stand in exactly the same relation to their duties as each so stands. A principal can not constitute himself an agent. All three can not create legal relations not authorized by law.

Again, the evidence shows beyond controversy, and from the State's witnesses exclusively, that a schoolhouse under control of Cole, Robinson and appellant needed repairs. It seems that appellant in a general way looked after and cared for the school property to be repaired. It was agreed that appellant should see that such repairs were made,

make out a voucher for incurred expenses, and sign the names of Cole and Robinson thereto approving same. This was done, and the names of Cole and Robinson were signed to the voucher, or what they termed a voucher, which was nothing but a check drawn on the depository in favor of appellant, signed by Cole and Robinson. This, with the approval of Cole and Robinson, was carried to the county superintendent, Stewart, who approved it. These steps were requisite under the statute. Appellant, upon securing the endorsement of the county superintendent, carried the document to the depository, and was informed that there were no funds to pay it. This was in October. The bank, through its proper officer, bought the warrant or check for the bank, discounting it five per cent. The following February sufficient school money had come into the hands of the depository to pay the voucher. The voucher was cashed, that is, the depository paid the bank. The bank discounted the warrant between $18 and $19. It is also shown by Robinson that he hauled some of the lumber to the schoolhouse for the repairs, for which received pay. The son or some member of Mr. Cole's family, the other trustee, also received pay for hauling lumber to the schoolhouse to be used for repairs. Both Cole and Robinson testified that they authorized appellant to sign their names to the voucher approving it. So this testimony makes it clear and beyond controversy that Cole and Robinson, neither or both, ever let appellant have a dollar of any sort of money, school money or private money. Applying the law to the facts, the conclusion is irresistible that they could not have turned over to appellant any money legally, and did not in fact turn over to him any money. The only thing they did or could possibly do was to approve the voucher. Therefore, the allegations in the indictment could not be supported from that viewpoint. Under no aspect of the law, as I understand it, could the relation of principal and agent have existed, and facts stated by the witnesses as shown by this record.

The indictment presented no case, the facts disproved embezzlement, and this by the State's evidence. As I understand the law and the facts, this conviction is not sustained by the law and is disproved by the facts.

I therefore respectfully enter this my dissent.