## John C. Parker v. The State.

No. 7255.　Decided October 10, 1923.

Rehearing overruled May 10, 1924.

1.—Assault to Murder—Jury—Selection of—Summoning Talesmen.

In the selection of a jury, before the regular panel has been exhausted it was apparent that a jury could not be secured from regular panel and the trial judge suggested to appellant's counsel that a jury could not be gotten from regular panel and 'that additional talesmen should be summoned, to which appellant's counsel agreed, and it was done accordingly. This presents no ground for complaint.

2.—Same—Evidence—Witness—Unresponsive Answer of.

Where the answer of a witness is not responsive to the question asked him, a motion to exclude his answer must be made. Merely excepting to such answer presents nothing before trial court for his decision, upon which error could be claimed.

3.—Same—Special Charges Requested—Properly Refused—When Covered in Main Charge.

Special charges presenting issues, submitted in court's main charge should be refused. Defendants theory of the right to act on apparent danger, having been submitted in main charge, special charge presenting that issue was properly refused.

4.—Same—Jurors—Qualification of—Not Fully Naturalized.

That jurors sat on appellants case, who had not been fully naturalized, did not present grounds for new trial. See Squyres v. State, 242 S. W. Rep., 1021.

5.—Same—Jurors—Passing by Scene of Difficulty—Not Error.

Where the difficulty occurred in the court house yard, and the jury in passing into and from court house passed by scene of difficulty, this fact did not present to them other testimony than that of witnesses, and no error is presented.

6.—Same—New Trial—Newly Discovered Evidence.

Newly discovered ;evidence. presented in a motion for a new trial, which is only impeaching in its character, does not call for nor warrant the granting of a new trial.

98 T. C.—14.

7.—Same—Charge of Court—Errors of Omission Must be Excepted to.

Where theory of accused, supported by evidence, presented issue of his right to defend against an attack that did not threaten him with death or serious bodily injury, and which issue was not submitted by the trial court, such omission should have been called to attention of trial court at the time, and exception taken. A special charge requested which, did not embrace a correct proposition of law, but did call the court's attention to the issue, was properly refused, and such refusal did not suffice to bring the point forward for review.

Appeal from the District Court of Lee County. Tried below before the Hon. R. Alexander, Judge.

Appeal from a conviction of assault of murder; penalty, five years in the State penitentiary.

*E. T. Simmang, L. D. Brown,* and *N. A. Rector,* for appellant.

*R. G. Storey,* Assistant Attorney-General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Lee County of assault with intent to murder, and his punishment fixed at five years in the penitentiary.

The evidence in the record seems ample to support the verdict and will not be set out or discussed further.

But fifteen jurors being before the court when this case was reached for trial, the judge administered to the sheriff the oath prescribed by Article 5170, Revised Civil Statutes, and directed him to summon other jurors. The sheriff 'phoned to certain deputies who thereupon caused twenty-six men to attend court as jurors at the time directed by the court in his instructions to the sheriff. Objection being made that these proposed jurors had been summoned by men not sworn so to do, the court then again directed the sheriff to summon the required number of jurors, whereupon the twenty-six men who had appeared were summoned by the officer and their names placed on the jury list. Without lengthy discussion it would appear that complaint of this procedure is not sound.

Appellant's bill complaining that additional talesman were summoned and added to the list of jurors drawn by the jury commission, before he was called on to strike the fifteen names of jurors who had been regularly drawn, is qualified by a statement of the learned trial judge that when the number of regular jurors was reduced on their *voir dire* to fifteen men, he suggested to appellant's counsel that a jury could not be gotten from said number and that additional talesmen should be summoned, to which appellant's counsel agreed and it was done accordingly. In making up the jury list the names of the

fifteen regularly drawn, appeared first. This presents no ground for complaint.

Five jurors on the list drawn by the jury commission failed to appear. Appellant asked for attachments and that the case not proceed until the absent jurors were brought in. The record contains no suggestion of injury to appellant from the court's refusal of both requests. It is not shown that appellant exhausted his challenges or that any objectionable juror was forced on him. Sweeney v. State, 59 Texas Crim. Rep., 370.

Witness Fields was asked to tell what he saw or did with reference to Pitts (the injured party) after the shooting. No objection was made to this question. As part of his answer the witness said that Pitts remarked as he helped him up from the ground after the shooting: "I knew he was going to get me." This was not responsive to the question. No motion was made to exclude said remark. It was *res gestae,* but in any event no motion having been made to exclude, there was nothing before the trial court for his decision, upon which error could be claimed. King v. State, 253 S. W. Rep., 262. The mere statement of appellant that he excepted to that part of the witness' testimony brought nothing before the court.

The argument of State's attorney complained of in bills of exception Nos. 5 and 6, as qualified by the trial judge, presents no error.

In the main charge the learned trial judge told the jury as follows:

"If you believe from the evidence that the defendant, John C. Parker, did, with a pistol, shoot the said H. R. Pitts; and you further believe from the evidence that at the time of such shooting the said H. R. Pitts did make a demonstration, as if to draw a weapon, that induced the defendant to believe, viewed by you from the defendant's standpoint at the time that he, the said H. R. Pitts, was about to attack him, and inflict death or serious bodily injury on him, then you are charged that the defendant had the right to shoot the said H. R. Pitts, and he would not be required to retreat in order to avoid the necessity, or apparent necessity, of shooting the said H. R. Pitts; and if you so find you will acquit the defendant.

In this connection you are charged that the danger need not have been real; it is sufficient if it so appeared to the defendant, and in passing upon this matter you must do so from the defendant's standpoint at the time as it appeared to him."

Analysis of this makes apparent that it obviates the necessity for giving special charges seeking to present the theory of the right of the accused to act on apparent danger.

That the State on cross-examination of a defense witness who said he was watching the parties to the difficulty when it occurred, was

allowed to ask said witness why he was watching them, would appear legitimate, and his answer that it was because of former trouble between the parties, would appear a fair examination and in no way injurious. The record discloses that while appellant was a witness in his own behalf he swore: "I had had some trouble with that man and it was reasonable to suppose he was mad." We find no ground for objection to said cross-examination.

That jurors sat in appellant's case who had not been fully naturalized was held not available as ground for a new trial in Squyres v. State, 242 S. W. Rep., 1021.

The principal way into the court house, in fact according to the witnesses practically the only one that was used, led near where the shooting occurred. An effort was made to show that the jury in passing saw and observed the surroundings at said place which would require granting a new trial upon the ground that they had received other testimony than that which came from the witnesses. We have carefully examined the evidence introduced before the trial court in support of the motion for new trial and think it entirely lacking in showing that any of the jury observed or considered any material things seen by them at said place, and that the trial judge in refusing to grant the new trial on this ground was wholly within his discretion.

That one juror explained in the Bohemian language to another the meaning of the word "guilty," would seem in nowise to constitute error; nor would the fact that after the jury had arrived at their verdict and were waiting to be called before the court to announce same. that some statement was made about how the prosecuting witness lost a finger.

Newly discovered evidence impeaching in its character would not call for the granting of a new trial, and such we consider to be that introduced by appellant in support of this ground of his motion for new trial.

Being unable to agree with appellant in any of the contentions made, the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

LATTIMORE, Judge.—This, in substance, is the appellant's testimony: He was fifty-nine years of age, weighed 135 pounds, and was five feet, ten inches in height. His left hand was broken, and rheumatism in his right shoulder which left him but little strength. He went to the court house upon business, and as he was leaving there, he met Pitts, the injured party, and the encounter took place. When about half way to the gate, he saw Pitts and Mrs. Richarz ap-

proaching, and when within five or six steps of the gate he noticed that Pitts had his hand to his face, but suddenly brought it down to his side and a little to the back, at the same time pushing his coat back. The appellant drew his pistol and threw it down upon Pitts, who jumped behind the woman, Mrs. Richarz. Pitts caught her by the shoulders and jerked her in front of him, that is, he was entirely behind her, peeping over her shoulder. The appellant, holding the pistol in his hand, continued walking to the gate, but could not see what Pitts was doing other than he was crouched behind the woman mentioned. Just after the appellant had passed through the gate, going towards the hotel, Pitts shoved the woman aside *and put her between himself and the appellant,* after which he rushed out from behind her, peeping over her shoulders. The appellant, holding the Pitts continued to attack. Appellant fired again and backed away. As Pitts knocked the pistol down, the appellant fired again. Pitts continued to follow him for ten or twelve feet, when they both went down with Pitts on top.

Pitts was thirty-four years old, weighed 196 pounds, and was six feet and one inch in height. He was a vigorous man and in good health.

The court, as set out in the original opinion, instructed the jury that if they believed that "at the time of the shooting Pitts made a demonstration as if to draw a weapon which induced the appellant to believe, viewed from his standpoint at the time, that Pitts was about to attack him and inflict death or serious bodily injury on him, that the appellant had a right to shoot," and this we think fully covered the principle contained in special charge No. 3 which was also requested.

Appellant contends that the charge quoted in the original opinion did not adequately protect his rights under the evidence for the reason that the shots fired by him were not responsive to a demonstration by Pitts as if to draw a weapon; that from the testimony given by the appellant, he, at the time that Pitts made a demonstration as if to draw a weapon, draw his own weapon, but did not fire but attempted to leave the court house yard and was in the act of doing so when Pitts, who was a larger and stronger man, attacked him, and that he then fired; that from his evidence the issue raised was not whether he had a right to fire his pistol when Pitts made a demonstration as if to draw a weapon, but whether he had a right to fire at the time Pitts rushed out from behind the woman and made an attack upon the appellant. It is insisted by the appellant that if it be conceded that Pitts' purpose in rushing upon the appellant was to disarm rather than to inflict serious bodily injury, Pitts' intent was not known to the appellant, he, according to his testimony, having acted upon his knowledge of Pitts' strength and his own weakness and upon the act of Pitts in rushing upon him, and was entitled to have the

jury instructed upon that phase of the case, and that the charge given was not sufficient. There seems to be no question that at the time the shots were fired Pitts was rapidly approaching the appellant, who was backing away; that when Pitts reached the appellant, he fell to the ground from some cause, and that Pitts was on top of him.

Appellant made no written exceptions to the court's charge, but presented several special charges, one of which reads thus:

"I instruct you that the defendant had the right to protect himself from any violent or unlawful attack, and if you find from the evidence that it reasonably appeared to the defendant, at the time, viewed from his standpoint, and from all the circumstances of the case, that an unlawful or violent attack was about to be made upon him, and that he drew his pistol to protect himself from said attack, and that such attack was made on the defendant, and that the defendant shot the witness Pitts, while said Pitts was engaged in the act of making said attack upon him, the defendant would not be guilty of the offense charged; and if you so find you will find the defendant not guilty and so say by your verdict.'"

It was the appellant's contention that in view of all the requested charges the court should either have amended his charge or given the charges which were refused.

"When the assailant is a larger and more powerful man than the assailed, and the latter is unable to resist his attack, either on account of inferior natural physical vigor or muscular debility occasioned through disease, it is equally general experience that such inability to resist on such account would naturally operate upon the mind of the assailed to create an apprehension of danger, which, if reasonably entertained, might justify him in killing his assailant." (Ruling Case Law, Vol. 13, p. 822, Sec. 126, and cases cited in note 12.)

See, also, Bearden v. State, 46 Texas Crim. Rep., 144; L. R. A. (N. S.), Vol. 3, p. 355.

It may be that by drawing his pistol in the first instance without sufficient grounds, the appellant was in the wrong and in effect invited an attack by Pitts. If so, the degree of his culpability would, be measured by his intent, and if in drawing his pistol his intent, as claimed by him, was only that he might be ready if Pitts should draw a weapon, appellant would not have been wholly unjustifiable in resisting the assault to the extent he did, which, according to his testimony, Pitts subsequently made without exhibiting a weapon. However, no charge on that phase of the facts was given or requested. Special charge No. 2, quoted above, which was requested, was inferentially applicable to a phase of the defense which was not embraced in the main charge, viz., the attack by Pitts who was of greatly superior strength; however, it was not specific in this respect and embraced an incorrect instruction. Whether the state of the record per-

mits the consideration of the refusal òf the special charge mentioned becomes a pertinent inquiry. ⎯Whether the point discussed is so presented that it may legally be reviewed is called in question. The inquiry is this: There being an omission in the charge of the court as read to the jury and no exception addressed thereto, does a special charge in which attention is called to the omission and which special charge is presented to the trial judge and refused by him and exception duly reserved, present the error for review? This matter depends upon the construction of Articles 735, 737, 737a, and 743 of the C. C. P. By these articles it is required that before the charge is read to the jury and after it is examined by counsel he shall present his objections thereto in writing, distinctly specifying each ground of objection. Before the charge is read, counsel for each side shall have a reasonable time within which to present written instructions to the jury and thereafter, before the argument begins, the judge shall read his charge to the jury as finally written, together with any special charges given, and all objéctions to the charge, and on account of refusal or modification of special charges shall be made at the time of the trial. This court, in the opinion on motion for rehearing in Boaz v. State, 89 Texas Crim. Rep., 523, discussed the matter at some length, holding that the special charge in that case did not sufficiently point out the omission in the main charge to direct the attention of the court to the matter complained of, and used this language:

"We do not desire to be understood as holding that where the special charge goes to some substantial matter, it would not in some cases be erroneous to refuse it, even though no objection was presented because of its omission from the main charge; yet, where the complaint goes only to the omission of a few words, we feel that in justice to the trial courts, and to make effective the law referred to, objectionable omission should be pointed out by exception then made."

In the opinion of the writer, this statement fairly portrays the intention of the legislature in writing the statutes mentioned. The history of those statutes and their verbiage leaves no doubt that they reflect the purpose of the legislature to prescribe procedure by which all substantial faults in the main charge of the court shall be made apparent to the trial judge at such time during the trial that he may correct any error, affirmative or negative, before the charge is read to the jury. In enacting these statutes on the subject of procedure, it is conceived that it was the intention of the legislature, that they be given the construction which would advance and promote the administration of justice but would not impair or defeat it. The rule stated in the Boaz case (supra) in the opinion of the writer, accords with this view.

So far as we are aware, the matter had not been pointedly discussed on any other occasion. The object to be obtained being to inform the district judge that his charge contains an omission against the rights

of the accused and that the accused desires that the omission be supplied, this can be accomplished either by exception to the charge specifically pointing out the omission, or by a special charge which is so framed as to inform the trial judge of the omission and which corrects the fault of which complaint is made, and which does not itself contain instructions which are incorrect or otherwise objectionable. In passing upon whether or not the matter is presented in a specific manner, note must be taken of the fact that it is presented to a person possessing the qualities of a judge and who is informed of the incidents of the trial by his presence thereat. Numerous cases are found, many of them recent, in which the principle that the matter may be presented in either manner, that is, by exception to the main charge or by special charges, has been recognized. Among them are Walker v. State, 299 S. W. 527; Boaz v. State, 89 Tex. Crim. Rep., 515; Charles v. State, 85 Texas Crim. Rep., 534; Lowe v. State, 83 Texas Crim. Rep., 134; Byrd v. State, 231 S. W. Rep., 399; Merka v. State, 82 Texas Crim. Rep. 569; Lowe v. State, 226 S. W., 677; Medford v. State, 86 Texas Crim. Rep., 237; Patten v. State, 84 Texas Crim. Rep., 584; Richardson v. State, 239 S. W., 218. Others might be mentioned.

In the present case no written exceptions were filed pointing out specifically any omission from the main charge, and the special charge requested did not embrace a correct proposition of law. Reverting to the charge requested, it will be seen that it instructed the jury that a party has a right to "defend against any violent or unlawful attack." This is true, but the extent to which he may defend depends upon the character of the violence threatened as it may appear to the party attacked. The latter element is entirely omitted from the requested charge; and if it had been given the jury would have been directed to acquit entirely if Pitts made an attack upon appellant and the latter shot Pitts, regardless of the character of the attack, and regardless of whether it created in appellant's mind a reasonable fear of death or serious bodily injury. This is not the law and the charge was properly refused. So the real question before us is this: In the absence of specific exceptions to the charge for an alleged omission therefrom did the requested special charge which did not embrace a correct proposition of law, and which the court was not required to submit, suffice to bring the point forward for review? We do not think so. To so hold would practically annul the statutes heretofore referred to and place the practice on the same basis obtaining prior to their passage. Appellant's motion for new trial was controverted by the State and upon the issue as to the citizenship of jurors Kubena and Baklik, the court heard evidence and found against appellant's contention. We think his conclusion was supported by the testimony heard.

For the reasons given we must decline to disturb the disposition of the case already made, and the motion for rehearing will be overruled.

*Overruled.*

OPINION ON APPLICATION TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We must decline to grant appellant's application for permission to file a second motion for rehearing, but have made minor corrections in our former opinion on rehearing to reach the points stressed in the application.