HOUSTON RANDOLPH V. THE STATE.

No. 14985.   Delivered November 9, 1932.
Reported in 54 S. W. (2d) 104.

The opinion states the case.

*J. J. Collins* and *R. W. Fairchild,* both of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction is for burglary; punishment, seven years in the penitentiary.

The testimony offered by the state in brief was as follows: The witness, J. D. McCardell, the person alleged in the indictment to be the person who owned and occupied the house alleged to have been burglarized, testified that he had lived in Camden about 16 or 17 years and had charge of the store at Camden which was alleged to have been burglarized; that he was the store manager during the entire year 1929. He further testified that he had missed goods out of the store during the fall and summer of 1929, and the kind of goods he missed during said time were groceries, dry goods, clothing, and shoes. He further testified that either L. M. Phillips or himself closed the store at night, and when he was not there Phillips superintended the closing of the store. He, the witness, always saw that the store was closed before leaving when he was there. When he missed the articles out of the store, he did not find any evidence of the building having been entered. The evidence further showed that on the night of October 14, 1929, the store was broken into and articles taken therefrom, and on the morning after the robbery goods were found that had come out of the store and he identified them by their cost mark. The goods found were new goods, and had never been used. They were found right back of the house of J. Randolph, the father of Houston Randolph, the appellant, who was living with his father. It is further shown by the evidence that the appellant was employed in said store as a porter during the day time and had access to the keys of the store during the day time but not after the store had closed at night.

Another witness testified that she knew the appellant, Houston Randolph, and she saw him during the summer of 1929 in Carmona and he was there selling goods, and he sold her husband some things; that the things he brought there for sale were some bacon, lard, sugar, coffee, rice, and also some hose; that she did not know exactly how many times he came to Carmona and sold stuff there, but it was four or five times; that her husband at one time bought from the appellant a pair of silk hose for the witness. She further testified that her husband would tell appellant and Farris King what he wanted from them, and sometimes they would bring some of the things he had ordered and sometimes they would not; that some of the things they bought from the appellant and King were sold very cheap; that it was cheaper than they could buy them at other places.

The state also offered in evidence a purported written confession of the appellant. The confession itself shows that it was in conformity with the statutory requirements to entitle the confession to be offered in evidence. Omitting the formal parts, the confession is as follows: "My name is Houston Randolph. I am 21 years old. My birthday is Jan. 10th. I am at present living in Houston, Harris County, Texas. I have worked in the store at Camden, Polk County, Texas, for about 7 years. I was called 'Porter' in the store. I went into the store at Camden during the year 1929 altogether between 15 and 20 times. I always went in there at night. Each time that I went in the store I got some merchandise out of there. No one gave me permission to go in there and take this stuff. I knew it was wrong every time that I went in there and stole this stuff. I would get groceries and dry goods whenever I wanted them. I got several men's leather coats out of there and would sell them to different parties. I got numerous articles of ladies silk underwear, including teddies, etc. I also got a number of pair of shoes and would sell them to different parties.

"Every time that I went in the store to take this stuff, Farris King would go with me. We would go over to Carmona and there take orders for what our customers wanted, and then go back, and when convenient steal it out of the store, and fill the orders and collect our money. People at Carmona have also written us letters, telling us what they wanted, and we would go to the store and steal it and take it over there and sell it to them. We have also carried some stuff to Diboll. We have carried some stuff to Pearl Tolston and sold it to her, this stuff being out of the store at Camden also. Tommy Sholars went with me on this last trip to carry groceries to Pearl. Tommy knew that this was stuff that was stolen out of the store at Camden at that time. We were in Tommy Sholar's car that last trip and had used his car numbers and numbers of times in delivering this stuff to our different customers. Tommy Sholars went with us a number of times to deliver this stuff to different places. I believe that I gave Tommy two dollars of the money that I got from Pearl. I would always give Tommy money on every trip that he went with us to deliver stuff. We also gave Tommy and his wife a number of different articles of clothing and shoes that we had taken out of the store. This went on between Tommy and his wife and us 'for a number of months. Ozay Boatright went with us on several of these trips. Farris and I had bought a new Chevrolet, that is, traded an old one in, and we had a note coming due about a week after

Mr. Holliday arrested all of us. We would keep a considerable amount of this stuff that we got out of the store locked up in a little house in my father's back yard."

Z. L. Foreman, the county attorney before whom the alleged confession was made, testified before the introduction of said purported confession of the circumstances under which the con-fession was taken. Said testimony showed that appellant had been properly warned before said confession was taken and that it was freely and voluntarily made and signed by appellant. Said witness also testified to a verbal statement made by appel-lant to him, while not under arrest, as to how he got in the store; that he would get the key in the day time and unlock the door, push the door to so he could go back there at night and get in.

The state in its election stated that it did not rely upon the alleged burglary on the night of October 14, 1931, but elected to rely upon the date between June 7 and October 14, 1929. The appellant did not testify and offered no testimony.

Appellant made a motion to quash the indictment, claiming that it was duplicitous in charging in the same count a burglary committed in the daytime and at night. The indictment spe-cifically averred that the burglary was committed by force, threats, and fraud, and also that appellant did break and enter a house without the consent of the owner and with the intent then and there to fraudulently commit the offense of theft. In the case of Young v. State, 84 Texas Crim. Rep., 232, 206 S. W., 529, the appellant made a motion to quash the indictment, claiming that it was duplicitous in charging in the same count a burglary both in the daytime and at night. The indictment specifically averred also that the burglary was committed by force, threats, and fraud, and also that he did break and enter a house with the intent to commit the offense of theft. In pass-ing upon said question, this court used the following language:

"It has been the settled law of this state, since the decision of this court in the Carr case, 19 Texas App., 635, 53 Am. Rep., 395, that in an indictment for burglary, other than the burglary of a private residence at night, if it alleges that the accused 'did break and enter,' it need not be alleged whether the entry was in the daytime or at night; that under such an allegation, when the proof shows the entry by force applied to the house, which is a 'breaking,' with the intent to commit felony or theft alleged, it is immaterial whether the house was entered in the day time or at night. In other words, when an indictment alleges, as stated above, that he 'did break and enter,' and by

force a house with the intent to commit theft, such an indictment charges both a nighttime burglary and a daytime burglary. For some of the cases so holding, see 2 Branch's Ann. P. C., Sec. 2327."

Appellant claims that there is a fatal variance between the allegation of the indictment and the proof as to the ownership of the alleged burglarized house. The proof showed that J. D. McCardell did not in fact own the business or the store alleged to have been burglarized, but he had complete charge of the mercantile establishment and a control over the employees in said store. Under the record before us, the ownership and possession of the house alleged to have been burglarized and the property therein was properly alleged to be in the said Mc-Cardell. His relation to the property was not that of a mere servant whose possession is confined to custody without right of disposition. See Ratliff v. State, 89 Texas Crim. Rep., 176, 229 S. W., 857; Daggett v. State, 39 Texas Crim. Rep., 7, 44 S. W., 148, 842.

Through requested charges, the appellant attempted to have submitted to the jury the necessity for corroboration of an extra-judicial confession which was refused and exception reserved and brought forward by bill of exception. The main charge is silent upon the subject, and, in our opinion, the failure to supply the omission could be raised by complaint of the refusal of the special charges. See Parker v. State, 98 Texas Crim. Rep., 216, 261 S. W., 782; Boaz v. State, 89 Texas Crim. Rep., 515, 231 S. W., 790. The requested charges refused were sufficient to call the court's attention to the omission and to make it incumbent upon the trial court to give said special charge or one in his own language covering the subject.

One of the issues submitted by the trial judge to the jury was the issue of whether or not the appellant had entered into a conspiracy or agreement with one Farris King to enter the building alleged to have been robbed by pushing open a closed door thereto at night, which had been left unlocked by the appellant during the day time for the purpose of committing the crime of theft, and did then and there get the goods therein, Farris King being present at the time of such entry into said building. This could not be shown by the confession alone nor was it required that under the law the proof come wholly from evidence independent of the confession. The evidence aside from the confession is not deemed sufficient alone to show that the offense of burglary was committed as alleged in the indictment. Omitting the confession, it is not shown that the appel-

lant had ever entered said store building after it had been closed, either by himself or with any other person. These were essential elements of the crime. The mere fact that the appellant may have sold some sugar, coffee, bacon, and clothes in another town from the one in which the store was located did not in itself show that he obtained them by burglary rather than by theft.

In this state of the record, the corroborating evidence adduced upon the trial is not of such cogency in our opinion as to dispense with the necessity of having a charge upon that subject to the end that the jury might know that under the law of the land a confession made by an accused out of court would not alone establish his guilt. As said by Judge Morrow in the case of Silva v. State, 102 Texas Crim. Rep., 415, 278 S. W., 216, 219, in passing upon a similar question: "Such a charge is held necessary * * * because it is hard for the jury to grasp the fact that one who admits his commission of the criminal act is not perforce of this admission alone to be convicted. That such a confession is not always reliable, experience teaches and all courts recognize."

The failure to instruct the jury under the facts of this case upon the necessity for corroboration of the confession was sufficiently raised, and, in refusing to give a charge upon this subject to the jury, the learned trial judge, in the opinion of this court, committed error which requires reversal of the judgment.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

HAWKINS, J., not sitting.