## BUFORD REED V. THE STATE.

No. 20795.  Delivered February 5, 1941.
Rehearing Denied April 2, 1941.
Application for Leave to File Second Motion for Rehearing
Denied April 9, 1941.

504

The opinion states the case.

*Willis & Via* and *Sturgeon & Sturgeon,* all of Pampa, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted under an indictment charging misapplication of the county funds of Gray County, and was by the jury sentenced to serve two years in the penitentiary.

It appears from the facts that Earl Talley, Sheriff of Gray County, died sometime in the early part of June, 1938, and his wife, Roberta Talley, was doubtless appointed to serve out her husband's unexpired term. That sometime in April, 1938, Earl Talley's office was in possession of an execution issued out of a district court of Harris County in cause No. 233352, Federal Land Bank of Houston v. H. H. Luttrell, et al., and it seems that such execution was levied upon certain properties in Gray County, and by the sheriff such was sold under said execution. That the costs accruing for the services of the sheriff's department were $27.64, and an additional sum of $12.48 was due as printer's fees, evidently for giving notice of such levy and contemplated sale. It is further shown that in the account of Earl·Talley for April, 1938, there was shown as fees earned by this sheriff and uncollected for that month the sum of $27.64, which report shows to have been signed and sworn to as correct by Earl Talley, Sheriff, by Buford Reed, deputy. This item never again appears in any further reports of the sheriff, either as paid or as uncollected.

It is further shown that these reports were rendered for Earl Talley, as well as for Roberta Talley, by appellant, who was their office deputy. It is further shown that the Federal Land Bank issued its check No. 311049 on July 15, 1938, payable to the order of the Sheriff of Gray County in the sum of $40.12, stating therein that same was in payment of. sheriff's costs and commissions in the above mentioned cause of Bank v. Luttrell, which check was shown to have been paid. As shown by the sheriff's account, the printer's fee of $12.48 deducted from the total of $40.12 leaves a payment of fees and commissions of $27.64, the amount alleged in the indict-

ment as unlawfully appropriated from the county by appellant. The record further shows that such amount of $27.64 has not been paid into the county. It is also shown by two witnesses that appellant admitted to them that he had received this money and not reported this amount, and had spent the same himself.

Bill of exceptions No. 1 complains because of the introduction in evidence of the appointment of Buford Reed, appellant, as a deputy by Roberta Talley, sheriff, for many and varied reasons, but suffice it to say that the county clerk testified that such appointments were a part of the records of his office, and same was on file therein as a public document, and we are not impressed with the idea that it was necessary for the State to show the preliminary steps necessary to the making of such appointment before its introduction in evidence. It is also observed by us that the oath of office of appellant of date June 10, 1938, taken under and by virtue of such appointment, appears in the record without objection. We think the designation itself was the best evidence of his appointment, and overrule this bill.

Appellant's bill of exception No. 2 is concerned with an effort to quash the indictment herein because, as appellant contends, while the indictment alleges that the appellant as a deputy sheriff was an officer of Gray County, nevertheless he was not such an officer as is contemplated by Art. 95, P. C., under which article this prosecution is based, wherein it is said: "If any officer of any county x x x shall fraudulently take," etc. We are not in accord with such contention. We think, under the authority of State v. Brooks, 42 Texas Reports, 62, that this is an incorrect proposition of law. In the Brooks case, decided by the Supreme Court before the creation of this court, the State appealed from an order of the trial court quashing an indictment against Brooks which had alleged that Brooks was an officer of the government, to-wit: a deputy sheriff, etc. The statute under which the Brooks case was filed was very similar to the statute here utilized, except that instead of using the words county, city or town, it used the words "the government," and included some further provisions not now in the law. In a long and well reasoned opinion Justice Gould holds that a deputy sheriff is an officer of a county, and can be charged as such for misapplying public funds. This case has also been cited by this court in the 4 Texas App. 410, 23 Texas App. 617, 28 Texas App. 141, as well as many other cases.

Bill of exceptions No. 3 complains because Roberta Talley,

sheriff, was allowed to testify that on July 15, 1938, Buford Reed was a deputy sheriff under her as sheriff; that he was her office deputy, and he was the one designated to handle the money that came into her office. As was said in discussing bill No. 1, it was shown by the record that Roberta Talley designated and appointed appellant as her deputy, and we find in the record without objection his oath of office as such, and we can see no error in allowing this deputy's superior officer to detail what appellant's special duties were under her. As stated heretofore, we do not think it essentially important to set forth all the details surrounding this appointment. The main thing to be here proven is was he a deputy sheriff, and as such did he receive any money, and did he pay the same where the law directs.

Bill of exceptions No. 4 is concerned with the allowing an auditor to testify that in an audit of the sheriff's accounts of Gray County, that there was an item of $27.64 which he found was received by the sheriff's office, which amount did not show to have been paid over to Gray County. While the books themselves may have been the best evidence of such a failure to pay, on account of their size and voluminousness and their many involved transactions, we think the testimony of the auditor, who had audited these books, could be used to show what he found relative to this item as a shorthand rendition of facts rather than to have offered each item therein and have the jury listen to see if the wanted item of $27.64 appeared in the funds listed as paid to Gray County.

Bill of exceptions No. 5 is a resume of all the grounds submitted to the court in appellant's requested peremptory charge to return a verdict of not guilty. We think such a request was properly overruled.

Appellant also contends that there is no proof that Gray County was under the salary bill as passed by the Legislature, with later amendments, and therefore it is not apparent that fees earned by the sheriff of that county belonged to Gray County. We judicially know that according to the last preceding census, at the time of the passage of this bill, Gray County was a county that contained 20,000 inhabitants or more, and as such, under Art. 3912-e, Sec. 1, Vernon's Civ. Statutes, it appears that such county compensated its county officers under the salary system, and that all fees earned by them belonged to the county, and were placed in what is called the "Officers

Salary Fund" to be used by the county for certain purposes. The pertinent part of such article being as follows:

"No district officer shall be paid by the State of Texas any fees or commission for any service performed by him; nor shall the State or any county pay to any county officer in any county containing a population of twenty thousand (20,000) inhabitants or more according to the last preceding Federal Census any fee or commission for any service by him performed as such officer."

In conclusion we say that this appellant was a county officer charged with the duty to collect and pay over moneys to the County of Gray. That he received moneys rightfully due such county, and according to the testimony, the records of the county fail to show that he paid over such money, but according to his own statement, so it is testified, he spent such money. We think this is shown by direct testimony, and therefore no charge on circumstantial evidence was called for.

We see no error presented in the record, and the judgment is affirmed.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

It was charged in the indictment that appellant was a deputy sheriff of Gray County and "as such officer, by virtue of said office," there had come into his possession certain money which he had converted to his own use.

The prosecution was under Article 95 of the Penal Code. Deleting that part not here applicable, said article reads as follows:

"If any officer of any county * * * shall fraudulently take, misapply, or convert to his own use any money * * * belonging to such county * * * that may have come into his custody or possession by virtue of his office * * * he shall be confined in the penitentiary not less than two nor more than ten years."

In his motion for rehearing appellant renews his contention that a deputy sheriff is not a county officer in contemplation of said Article 95. It is his further contention that the case of Brooks v. State, 42 Texas Rep. 62, cited in our original opinion, is not applicable here because the prosecution in that case was under a different statute. It is true that case was predicated on what is now Article 86 of the Penal Code, but we think

the reasoning in the opinion as to what is meant by officers generally has application in the present case. We cite also Crump v. State, 23 Texas Cr. App. 615; Hibbetts v. State, 136 Texas Cr. R. 170, 123 S. W. (2d) 898. Appellant refers to Hartnett v. State, 56 Texas Cr. R. 281, 119 S. W. 855, as supporting his contention that a deputy sheriff is not included under the term "officer" in said Article 95. Hartnett was a police officer in the City of Beaumont. It was alleged that by virtue of said office certain money which belonged to the city had come into his hands and that he converted it to his own use. It was held that the evidence failed to show that Hartnett was authorized by law to receive the money. We do not regard said case as authority supporting appellant's position. It occurs to us that Article 6869, R. C. S., (Vernon's Centennial Edition, 1936), should settle any question regarding a deputy sheriff's status as an officer of the county. Said article reads in part as follows:

"Sheriffs shall have the power, by writing, to appoint one or more deputies for their respective counties, to continue in office during the pleasure of the sheriff, *who shall have power and authority to perform all the acts and duties of their principals*; and every person so appointed shall, *before* he enters upon the duties of his office, *take and subscribe to the official* oath, which shall be indorsed on his appointment, together with the certificate of the officer administering the same; and such appointment and oath shall be recorded in the office of the County Clerk and deposited in said office." (Italics ours).

By the very terms of said statute a deputy is clothed with the "power" and "authority" to perform all the duties of his principal *after* he has taken the official oath. It would appear curious to require him to take an *official* oath and still hold that he was not an official of the county.

We are in accord with the appellant's contention that, as a general rule, a sheriff is liabel in civil actions for the acts, defaults and misconduct of his deputy in the performance of a deputy's official duties, but such liability is no bar to a prosecution for a penal offense committed by such deputy.

Appellant again urges that the amendement to the State Constiution adopted in 1935, now appearing as Section 61 of Article 16 of the State Constitution in Vernon's Texas Statutes, 1936 Centennial Edition, was not self-enacting, and that until the Commissioners' Court fixed the salaries of county officers, the fees accruing to any such office was the property

of the officer. Appellant contends that the State failed to make proof that the Commissioners' Court of Gray County had fixed the salary of the sheriff of said county, and therefore the money which appellant is charged with converting belonged to the sheriff and not to Gray County as alleged in the indictment. As supporting such proposition we are cited to Glaister v. Board of Commissioners of Kit Carson County, an opinion from the Court of Appeals of the State of Colorado, reported in 123 Pac. Rep. 955. We think there is such a marked distinction between the constitutional provision dealt with by the Colorado Court and the one here referred to as to render said opinion inapplicable. As we understand it, the Constitution of Colorado, Section 15, Article 14, provided that:

"Where salaries are provided, the same shall be payable only out of the fees actually collected, in all cases where fees are prescribed. All fees, perquisites, and emoluments *above* the amount of *such salaries* shall be paid into the county treasury." (Italics ours).

The court said:

"Until salaries were provided by law for county officers, all of the fees collected by such officer belonged to him absolutely."

Our constitutional amendment (Art. 16, sec. 61, Const. as found in Vernon's Texas Statutes, 1936, Centennial Edition), deleting the part not here applicable, reads as follows:

"*All County officers* in counties having a population of 20,000 or more, according to the then last preceding Federal Census, *shall* from the first day of January and thereafter and subsequent to the first Regular or Special Session of the Legislature after the adoption of this Resolution, be *compensated* on a *salary* basis. * * * *All fees* earned by * * * county * * * officers *shall be paid into the county treasury where earned for the account of the proper fund.*" (Italics ours).

It will be observed that *all fees* are required to be paid into the county treasury under our constitutional amendment and not those *above* the salary limit as provided in the Colorado Constitution.

Section 61, Article 16 of the Texas Constitution was adopted in August, 1935. The Legislature, (2nd Called Session, in November, 1935, Chapter 465) put into effect the machinery for fixing the salaries of officers affected by the amendment,

and the law so providing said machinery became operative on January 1, 1936. It was in effect at the time of the alleged conversion of the funds here involved. If Commissioners' Courts were remiss in fixing salaries, the officers affected by such neglect had their remedy to compel the performance of such duty.

Appellant sought to have the court instruct the jury that even though they should find from the evidence beyond a reasonable doubt that appellant admitted to Goodrich and Wilson that he (appellant) received and appropriated the money involved, that such admission, standing alone, was not sufficient to authorize a conviction. Exception to the refusal of said special charge was reserved and it is again urged in the motion for rehearing that such refusal presents reversible error. The necessity or otherwise for such an instruction as here requested turns upon the facts of the particular case. If proof of the commission of the crime depends upon the extra-judicial statement or confession of the accused, it has been held that such a charge is appropriate. If the crime is shown by evidence other than the confession which admits accused's connection with it, such an instruction is not required. See Branch's Ann. Texas P. C., Sec. 75. Cases illustrative are Silva v. State, 102 Texas Cr. R. 415, 278 S. W. 216; Richardson v. State, 90 Texas Cr. R. 353, 235 S. W. 578; Randolph v. State, 122 Texas Cr. R. 151, 54 S. W. (2d) 104; Willard v. State, 27 Texas Cr. App. 386, 11 S. W. 453; Sullivan v. State, 40 Texas Cr. R. 633, 51 S. W. 575; Sowles v. State, 52 Texas Cr. R. 17, 105 S. W. 178.

Under the facts here presented, we think the failure to give the charge does not present reversible error. The evidence shows that Mrs. Talley had practically turned over the running of the sheriff's office to appellant. She did not handle the money or make the reports. He did. She signed or endorsed such checks as were brought to her by appellant. The money here involved had been reported as earned fees. It is shown beyond question that it was paid into the office. It was the duty of appellant to report the collection and pay it into the treasury of the county. This he failed to do. These facts we think bring the case within the class where reversible error did not result from a refusal of the requested charge.

A further review of the record leads us to believe that the

proper disposition of the case was made originally. The motion for rehearing is overruled.

### ON APPELLANT'S APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

CHRISTIAN, Judge.

Our re-examination of the record in the light of appellant's application for leave to file second. motion for rehearing leaves us of opinion that proper disposition has been made of the appeal.

The application for leave to file second motion for rehearing is denied.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.