

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 14, 1960

Honorable George E. Gilkerson
District Attorney
Lubbock, Texas

Dear Mr. Gilkerson:

Opinion No. WW-933

Re: Whether prosecution will lie
under Article 95 of the Penal
Code based on failure of a
sheriff to turn in funds collected
as a result of a capias pro fine?

You have asked the question of whether prosecution will lie under Article
95, Penal Code of Texas, based on the failure of a sheriff to turn in funds
collected as a result of a capias pro fine, under the following fact situation:

"On or about December 6, 1957, Gonzalo Rojas was arrested by
J. T. Herrington, Sheriff of Crosby County, for violation of the
liquor laws. Rojas pleaded guilty on December 7, 1957, and was
fined $400 and costs and was sentenced to 30 days in jail. Rojas
was freed when his attorney made Motion for New Trial.

"On or about December 8, 1957, the Sheriff, ignoring the Motion
for New Trial, went out to Rojas' house and arrested him and placed
him in jail. Rojas stayed in jail until the 20th day of December.
At that time, the Sheriff told Rojas that he would let him go if he
would pay one-half of the fine. A friend of Rojas, Bernardo Gonzales,
came in on the 20th day of December and gave the Sheriff a check for
$200 and the Sheriff released Rojas.

"On January 27, 1958, the Clerk of the County Court of Crosby County
issued a capias pro fine commanding the Sheriff to take the body of
Gonzalo Rojas and place him in the County Jail of Crosby County until
the fine and costs were paid. The Sheriff actually gave the capias
pro fine to the Defendant Rojas as a receipt with the remarks thereon
as follows: 'Came to hand the 27th day of January, 1958, and Executed
the 3rd day of February, 1958, by collecting an additional $160 from
Gonzalo Rojas plus $200 paid on December 23, 1957, leaving a balance
of $84.05 still due.' The capias pro fine was signed by J. T. Herring-
ton, Sheriff of Crosby County, Texas.

"About a week later, Rojas paid $84.05 to Deputy Sheriff Alvie Ratheal
which was the balance of his fine and costs.

"The only money reported to the Commissioners Court or turned over to
the County Treasurer was the $84.05 collected on or about the 10th of
February, 1958, by Alvie Ratheal.

"Sheriff J. T. Herrington co-mingled both the $200 payment and the $160 payment with his own money and spent it."

Article 95 of the Texas Penal Code reads as follows:

"<u>If any officer of any county</u>, city or town, or any person employed by such officer, <u>shall fradulently take, misapply, or convert to his own use any money</u>, property or other thing of value <u>belonging to such county</u>, city or town, <u>that may have come into his custody or possession by virtue of his office or employment</u>, or shall secret the same with intent to take, misapply or convert it to his own use, or shall pay or deliver the same to any person knowing that he is not entitled to receive it, <u>he shall be confined in the penitentiary not less than two nor more than ten years</u>." (Emphasis added)

Article 787, Code of Criminal Procedure reads as follows:

"When a judgment has been rendered against a defendant for a pecuniary fine, if he is present, he shall be imprisoned in jail until discharged as provided by law. A certified copy of such judgment shall be sufficient to authorize imprisonment."

Article 788, Code of Criminal Procedure reads as follows:

"When a pecuniary fine has been adjudged against a defendant not present, a capias shall forthwith be issued for his arrest. The sheriff shall execute the same by placing the defendant in jail."

Article 789, Code of Criminal Procedure reads as follows:

"Where such capias issues, it shall state the rendition and amount of the judgment and the amount unpaid thereon, and command the sheriff to take the defendant and place him in jail until the amount due upon such judgment and further costs of collecting the same are paid, or until the defendant is otherwise legally discharged."

Article 1616, Revised Civil Statutes of Texas, states:

"An account shall be kept with the sheriff charging him with all judgments, fines, forfeitures and penalties, payable to and rendered in any court of the county, the collection of which he is by law made chargeable, the sheriff may free himself from liability from such charge by:

(1)   Producing the receipt of the County Treasurer showing the payment of such judgment, fine, forfeiture or penalty.

(2)   Showing to the satisfaction of the Commissioners' Court that the same cannot be collected, or that the same has been discharged by imprisonment or labor, or by escape, without his fault or neglect, and obtaining an order from said court allowing the same."

To convict under Article 95 the State must show:

1.   The Defendant is an "officer" and held office. Germany v. State, 109 Cr.R. 180, 3 S.W.2d 798.

2.   The funds were converted to his own use.  (only slight evidence of fraudulent intent required)  Busby v. State, 51 Cr.R. 289, 103 S.W. 638.

3.   That the funds came into his custody by virtue of his office or employment.  Hanna v. State, 138 Cr.R. 183, 135 S.W.2d 105 followed in 138 Cr.R. 186, 135 S.W.2d 106 and 138 Cr.R. 186, 187, 188, 135 S.W.2d 107.

In the case of Reed v. State 141 Cr.R. 503, 149 S.W.2d 119, a deputy sheriff was charged with violation of Article 95.  The money was a fee earned by the sheriff for levy of execution upon certain properties.  Accused had received this money and not reported it and had spent it himself.  This case clearly holds that a sheriff is an "officer" as contemplated by Article 95.

The evidence of conversion in the present case is apparently the same as in the Reed case and is sufficient to support a conviction.

The court held in the Reed case the funds came into Reed's custody by virtue of his office.  In the present case the sheriff had a duty to collect and account for all fines.  Article 1616, R.C.S. of Texas.

In the case of Moore v. State, 53 Neb. 831, 75 N.W. 319, quoted with approval in Hartnett v. State, 56 Cr.Rp. 281, 119 S.W. 855 (1909), the court said:

". . . where an officer receives money which he is not by law authorized to receive, such money is not received by him in his official capacity, . . ."

The question here is whether the sheriff was authorized by law by virtue of a capias pro fine to receive the payment of the $160 in question when the payments were not made in strict compliance with the law.  The point has been

raised that the sheriff has no authority to make illegal collections.  The *Moore* case goes on to say:

"Where a criminal statute applies only to persons of a certain class, the doing of the acts which the statute forbids does not estop the defendant from denying that he belongs to the class which he is alone subjected to the penalties."

The Moore case further states:

"The cases cited as applying estoppels are for the most part cases where an officer charged by law with the duty of collecting taxes has actually collected them and then refused to turn them over because illegally levied.  There the general duty of collecting the money was imposed by law on the officer.  The money was paid. The legality of the tax was a question solely between the public and the taxpayer, and the latter having voluntarily paid the tax, it was no affair of the collector whether he might have resisted the payment or not.  The matter was not one of an estoppel.  The issue was merely immaterial."

In the present case the sheriff has a duty to collect fines and cannot raise the issue that the fines were improperly collected to defeat prosecution.  This being true, prosecution will lie.

### SUMMARY

Under the fact situation given prosecution will lie under Article 95 of the Penal Code based on failure of a sheriff to turn in funds collected as a result of a capias pro fine.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: Cecil Cammack, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE
W. V. Geppert, Chairman
Bob Shannon      B. H. Timmins
Tom Burrus       Riley Eugene Fletcher

REVIEWED FOR THE ATTORNEY
GENERAL BY:
Leonard Passmore